UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| SHAFIQULLAH KOSHANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-265 |
| | ) | |
| ERIC WAYNE BARTON and VANQUISH | ) | |
| WORLDWIDE LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss [doc. 43], Defendants' Brief [doc. 44], Plaintiff's Response [doc. 49], and Defendants' Reply [doc. 50]. For the reasons herein, the Court will grant Defendants' motion in part and deny it in part.

### I.  BACKGROUND

A citizen and resident of Afghanistan, Plaintiff Shafiqullah Koshani alleges that he and Defendant Eric Barton, a citizen of the United States, established a joint venture in Afghanistan in 2010. [Am. Compl., doc. 41, ¶¶ 2, 7–8]. They documented the terms of their joint venture in a Joint Venture Agreement [doc. 41-1], which entitled Mr. Koshani to receive fifty-one percent of any net profits, [*id.* at 2]. Mr. Koshani maintains that the parties registered the joint venture with the Afghan government and procured a business license; named their new business Vanquish Worldwide ("Vanquish Afghanistan"); and

pursued a contract with the United States Army, which was soliciting bids for a project known as "National Afghan Trucking," or "NAT," in Afghanistan. [Am. Compl. ¶¶ 2, 14, 20–21]. According to Mr. Koshani, he "invested his own money in efforts to obtain and lay the groundwork for [securing] the NAT prime contract." [*Id.* ¶ 27]. Specifically, he provided Vanquish Afghanistan with "equipment, assets, pricing, experience and contacts on the ground in Afghanistan, and approximately 80 percent of the more than $1.3 million in start-up funds." [*Id.* ¶ 2].

Mr. Koshani alleges that Mr. Barton submitted a proposal to the United States in response to the NAT solicitation but that he did not submit it in Vanquish Afghanistan's name. [*Id.* ¶ 28]. Instead, he allegedly submitted it on behalf of a company with a nearly identical name, Vanquish Worldwide, LLC ("Vanquish United States")—a company that he allegedly owned in Tennessee—and tabbed Vanquish Afghanistan as a subcontractor that would render services under the contract. [*Id.* ¶¶ 9, 29]. In addition, Mr. Koshani maintains that Mr. Barton provided the United States with a bank account number that belonged to Vanquish United States. [*Id.* ¶ 31]. The United States ultimately awarded the NAT contract to Vanquish United States. [*Id.* ¶ 34].

Afterwards, Mr. Barton allegedly informed Mr. Koshani that he had secured the NAT contract on Vanquish United States' behalf, instead of on Vanquish Afghanistan's behalf, and asked Mr. Koshani to agree to make Vanquish Afghanistan a subcontractor under the NAT contract. [*Id.* ¶ 35]. Mr. Koshani claims that he refused to do so because he had agreed to be Mr. Barton's partner, not his subcontractor, and he insisted that they proceed with the terms of the Joint Venture Agreement. [*Id.* ¶¶ 35–36]. They then entered

into a Profit Sharing Agreement [doc. 41-2], in which Mr. Barton acknowledged that he had received Mr. Koshani's "help[]" in building Vanquish Afghanistan and creating the proposal that the United States accepted. [*Id.* at 1]. In the Profit Sharing Agreement, the parties agreed that Mr. Koshani would be entitled to half of Vanquish United States' net profits from the NAT contract, though they also expressed their simultaneous intention to proceed "as per our agreement." [*Id.*]. Mr. Koshani claims that Mr. Barton entered into the Profit Sharing Agreement in his binary capacity as Vanquish Afghanistan's vice president and as Vanquish United States' president. [Am. Compl. ¶ 38].[1]

Mr. Koshani alleges that, in honoring this new agreement, he provided significant start-up capital to Venture United States so that it could perform its responsibilities under the NAT contract. [*Id.* ¶¶ 44]. He asserts that this capital included $100,000 in insurance premiums, more than $450,000 in equipment, funds for its employees' salaries, and the purchase of uniforms and office supplies. [*Id.* ¶¶ 44, 48]. In total, he professes that he invested approximately $1.1 million in Vanquish United States between 2011 and 2012, whereas Mr. Barton contributed roughly $250,000. [*Id.* ¶¶ 48–49].

According to Mr. Koshani, when the United States began making payments to Vanquish United States under the NAT contract, Mr. Barton initially allocated shares of those payments to him. [*Id.* ¶ 50]. But by August 2012, Mr. Barton allegedly stopped providing Mr. Koshani with his share of the profits, and he eventually cut him out of the

---

[1] The Profit Sharing agreement states: "I Eric Barton President of Vanquish [United States] registered in Wyoming and vice president of Vanquish [Afghanistan] acknowledge [the following terms]." [Profit Sharing Agreement at 1].

business altogether. [*Id.* ¶¶ 51–52]. Mr. Koshani estimates that the United States paid nearly $32 million to Vanquish United States under the NAT contract and that it received net profits under the contract that totaled at least $11 million. [*Id.* ¶ 57–58]. He believes that the Profit Sharing Agreement entitles him to half of these profits. [*Id.* ¶ 58].

To recover them, he filed suit in this Court against Mr. Koshani and Vanquish United States ("Defendants"), bringing multiple claims. They include breach of contract, breach of fiduciary duty, conversion, unjust enrichment, equitable accounting, breach of duty of care, breach of duty of loyalty, breach of duty of trust, usurpation of corporate opportunities, breach of the covenant of good faith and fair dealing, an accounting, and a request for punitive damages. [*Id.* at 13–26]. Defendants now move for dismissal of all these claims under Federal Rule of Civil Procedure 12(b)(6). [Defs.' Mot. at 1].

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether to dismiss a complaint under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to

4

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

Defendants raise manifold arguments for the dismissal of Mr. Koshani's claims, ranging from contractual interpretation to the statute of limitations. The Court will now proceed with these arguments on a claim-by-claim basis, as Defendants have done in their legal brief. [Defs.' Br. at 3–25].

#### A. Count One: Breach of the Joint Venture Agreement

In Count One, Mr. Koshani alleges that Mr. Barton breached the Joint Venture Agreement in several ways, including by failing to provide Mr. Koshani with fifty-one percent of Vanquish United States' net profits and by failing to permit Mr. Koshani to inspect Vanquish United States' records, statements, and accounts:

> 65. Defendant Barton breached the Joint Venture Agreement by:
>
> . . . .
>
> b. Failing to pay to Plaintiff 51 percent of the net profits of the business operations in Afghanistan of Vanquish [United States], which were subject to his joint venture partnership with Plaintiff; and
>
> c. Failing to make open for inspection and examination by Plaintiff or his agents the records, statements and accounts of the business operations in Afghanistan of Vanquish [United States], which were subject to his joint venture partnership with Plaintiff[.]

5

[Am. Compl. at 13]. Mr. Barton, however, argues that dismissal of these allegations is proper because the Joint Venture Agreement's plain terms do not entitle Mr. Koshani to receive net profits from Vanquish United States or to inspect Vanquish United States' records or other documents. [Defs.' Br. at 3–4]. In response, Mr. Koshani highlights portions of the Joint Venture Agreement. [Pl.'s Resp. at 8]. He notes that Section Five provides that "[t]he net profits earned by the joint venture . . . shall be divided among the parties as follows: Eric Barton shall receive 49 percent (49%), and [Mr. Koshani] shall receive 51 percent (51%)." [J.V. Agreement at 2]. He also notes that Section Seven states that "Eric Barton shall maintain . . . records, statements, and accounts concerning the total operation of the joint venture" and that "[a]ll the books will be open at all times for inspection and examination by [Mr. Koshani]." [*Id.* at 3].

In the Joint Venture Agreement, the parties define "joint venture" as an enterprise that "shall be conducted under the name of Vanquish [Afghanistan] from a place of business at . . . City of Kabul, State of Afghanistan." [*Id.* at 1].[2] This plain language could not be any more transparent. The parties unmistakably intended their legal obligations under the Joint Venture Agreement—including under Section Five and Section Seven—to extend to and flow from Vanquish Afghanistan. *See Bokor v. Holder*, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986) (stating that courts cannot look beyond a contract's terms unless

---

[2] On a Rule 12(b)(6) motion to dismiss, the Court normally has to confine its analysis to the allegations within the four corners of the complaint. *In re Unumprovident Corp. Secs. Litig.*, 396 F. Supp. 2d 858, 873 (E.D. Tenn. 2005). The Court, however, can depart from this general precept and consider a document that is "attached to, incorporated by, or specifically referred to in the complaint," as is the case with the Joint Venture Agreement and the Profit Sharing Agreement. *Id.* (citations omitted).

they are ambiguous); *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003) (noting that a contract's terms are ambiguous only when they are "susceptible to more than one reasonable interpretation" (citation omitted)). Simply, the Joint Venture Agreement does not state that Mr. Barton must share Vanquish United States' profits with Mr. Koshani or permit Mr. Koshani to inspect Vanquish United States' records. The parties do not even mention Vanquish United States in the Joint Venture Agreement.[3] The Court cannot possibly interpret the Joint Venture Agreement—by itself—as governing anything other than the parties' relationship vis-à-vis Vanquish Afghanistan. The Court will dismiss paragraphs 65(b) and 65(c) of the Amended Complaint.

### B. Count One: Breach of the Profit Sharing Agreement

Mr. Koshani also alleges that Mr. Barton breached the Profit Sharing Agreement in numerous ways, including by failing to pay him half of Vanquish United States' net profits under the NAT contract:

> 66. Defendants breached the Profit Sharing Agreement by:
>
> a. Failing to conduct business in Afghanistan through the joint venture partnership between Defendant Barton and Plaintiff, including by submitting proposals for and obtaining and performing the NAT 1.5 and NAT II contracts in the name of Defendant Vanquish [United States] rather than in the name of the partnership.
>
> b. Failing to pay or cause to be paid to Plaintiff 50 percent of the net profit of Vanquish [United States] on the NAT contract;
>
> c. Failing to pay or cause to be paid to Plaintiff 50 percent of the net profit of

---

[3] Along these same lines, Mr. Koshani alleges that Vanquish United States is a "separate company." [Am. Compl. ¶ 31; *see id.* ¶ 95(d) (describing Vanquish United States as a "separate, personally-owned company in the United States")].

7

> Vanquish [United States] on business operations in Afghanistan, which were subject to the joint venture partnership with Plaintiff; and
>
> d. Failing to use the specified AIB account for all incoming and outgoing money under the business operations in Afghanistan of Vanquish [United States].

[Am. Compl. at 13–14]. Mr. Barton maintains that dismissal of these allegations is proper because the Profit Sharing Agreement "lacks essential terms to make it an enforceable contract" and because "it is an unenforceable 'agreement to agree.'" [Defs.' Br. at 6].

      1. *Essential Terms*

In arguing that the Profit Sharing Agreement lacks necessary terms, Mr. Barton laments its "tangled language," which he believes provides no guidance as to "the roles, responsibilities, and obligations of the parties." [Defs.' Br. at 8, 9]. Specifically, he argues that the Profit Sharing Agreement offers no timeline for the distribution of profits and does not provide a method for calculating profits. [*Id.* at 9]. In response, Mr. Koshani contends that Mr. Barton's arguments "go to whether the agreement is ambiguous," which should not result in the Court's outright rejection of his claim but in an opportunity for him manufacture evidence, like the parties "acts and deeds," that would assist the Court in interpreting the contract. [Pl.'s Resp. at 11].

Under Tennessee law, "[i]f the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553–554 (Tenn. Ct. App. 1991) (citation omitted). But courts do not favor a conclusion that a contract is too indefinite to warrant enforcement; instead, they aim to carry out the

reasonable intentions of parties if possible. *German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009). In this vein, "courts will seek to avoid finding that an agreement is too uncertain to be enforceable by considering the surrounding circumstances and conduct of the parties." *Id.* (citation omitted). The surrounding circumstances and conduct of the parties—or their "acts and deeds," as Mr. Koshani labels them, [Pl.'s Resp. at 11]—are issues of fact,[4] and the Court is unable to consider or resolve factual questions here on a motion to dismiss. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). The Court therefore declines to jettison Mr. Koshani's claim based on Mr. Barton's contention that the Profit Sharing Agreement lacks essential terms.

### 2. *Unenforceable Agreement to Agree*

Continuing to target the Profit Sharing Agreement's terms, Mr. Barton next argues that Mr. Koshani's claim requires dismissal because the Profit Sharing Agreement is an unenforceable agreement to agree. [Defs.' Br. at 6–7]. When parties to a contract leave a term "open for future negotiation, there is nothing more than an unenforceable agreement to agree." *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015) (citation omitted). But the Court has no need to delve deeply into this argument because it is an offshoot—if not a facsimile—of Mr. Barton's prior argument relating to

---

[4] Mr. Koshani alleges that Mr. Barton was initially paying him under the Profit Sharing Agreement. [Am. Compl. ¶ 50]. This allegation, if evidence exists to support it, may aid the Court in determining the parties' intentions as to this agreement.

the Profit Sharing Agreement's absence of essential terms. *See id.* (indicating that an unenforceable agreement to agree involves issues that are akin to the absence of essential terms and reviewing the record for evidence of the surrounding circumstances and the parties' conduct). Once again, the Court declines to dismiss Mr. Koshani's claim based on this argument—which ushers the Court precariously close to the resolution of factual issues.

### C. Count Two: Breach of Fiduciary Duty

In Count Two, Mr. Koshani pleads that Vanquish United States owed a fiduciary duty to him and breached that duty "by failing to divide or distribute the property and net profits of the business operations in Afghanistan between [the parties] according to their respective interests." [Am. Compl. ¶ 72]. Mr. Koshani claims that this duty springs from the Joint Venture Agreement and the Profit Sharing Agreement, if the Court were to view them together. [Am. Compl. ¶¶ 69–70; Pl.'s Resp. at 15]. Vanquish United States now presents a two-fold argument for the dismissal of Mr. Koshani's allegations, contending that the Joint Venture Agreement does not create a fiduciary duty and that, even if it does, the statute of limitations bars Mr. Koshani's claim. [Defs.' Br. at 9–14].

#### 1. *The Effect of the Two Agreements*

A fiduciary or trustee has a duty to "take all actions on [a beneficiary's] behalf in the 'utmost good faith, loyalty, and honesty.'" *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (quotation omitted). Mr. Koshani proposes that a fiduciary duty resides in Section Four of the Joint Venture Agreement, which states:

> All legal property acquired by the joint venture, whether real or personal, shall be taken in the name of Vanquish [Afghanistan], as trustee for the parties, and shall be held for their interest. The interest of each party in such property shall be proportionate to his or her share of the profits of the venture.

[Am. Comp. ¶ 69]. He maintains that this duty extends not only to Vanquish Afghanistan but also to Vanquish United States through the Profit Sharing Agreement because this agreement is "within the scope of the" Joint Venture Agreement and "arose from the need to address" Mr. Barton's actions under the Joint Venture Agreement. [Pl.'s Resp. at 15; *see* Am. Compl. ¶¶ 35–37]. As support for this contention, he highlights the fact that the parties referenced the Joint Venture Agreement in the Profit Sharing Agreement and that Mr. Barton specifically entered into the Profit Sharing Agreement as an officer of both Vanquish Afghanistan and Vanquish United States. [Pl.'s Resp. at 15–16].

In response, Vanquish United States brands Mr. Koshani's argument as an exercise in "mental gymnastics" and underscores the fact that neither the Joint Venture Agreement nor the Profit Sharing Agreement contains plain language that imposes a fiduciary duty on it. [Defs.' Reply at 7]. According to Vanquish United States, if "the parties desired to modify" the Joint Venture Agreement "they could have simply done so." [*Id.* at 7–8]. But it claims that "[t]hey did not, which is why [Mr.] Koshani is left with his strained and unsupported argument." [*Id.* at 8].

As Venture United States suggests to the Court, Mr. Koshani's allegations can add up to a plausible claim only if the Court were to view the Profit Sharing Agreement as a modification of the Joint Venture Agreement—one that binds Vanquish United States to

11

the terms of Section Four. *See Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611 (Tenn. Ct. App. 2011) ("A modification to a contract . . . introduces new elements into the details of the contract . . . but leaves the general purpose and effect of the contract undisturbed." (internal quotation marks and quotation omitted)). But the issue of whether the parties intended to modify the Joint Venture Agreement is not exclusively a legal matter of contractual interpretation. It can also consist of factual questions because a modification "may be implied from a course of conduct." *Id.* at 612 (citation omitted).

These types of factual questions appear to be particularly germane to this case because Mr. Koshani alleges that the parties conceived the Profit Sharing Agreement in response to Mr. Barton's actions under the Joint Venture Agreement and that Mr. Barton honored the Profit Sharing Agreement. [*See* Am. Compl. ¶¶ 35–37, 50]. The Court can reasonably infer that the parties, through their alleged course of conduct, intended to modify the Joint Venture Agreement. The Court, however, will refrain from considering the factual particulars of the parties' alleged conduct—that is, the full *extent* to which they intended to modify the Joint Venture Agreement through their conduct. *Ecclesiastical Order of the ISM*, 725 F.2d at 403; *Mike Vaughn Custom Sports*, 15 F. Supp. 3d at 753.

2. *The Statute of Limitations*

Next, the parties dispute which statute of limitations governs Mr. Koshani's claim under Tennessee law—a three-year period or a six-year period. [Defs.' Br. at 12–13; Pl.'s Resp. at 17–20].[5] Vanquish United States maintains that Mr. Koshani's claim is untimely

---

[5] Under Tenn. Code Ann. section 28-3-105, the statute of limitations is three years, whereas under Tenn. Code Ann. section 28-3-109, the statute of limitations is six years.

under the three-year period because, based on the allegations, he "was aware or should have been aware of any alleged breach of fiduciary duty once he was no longer receiving payments . . . in August 2012." [Defs.' Br. at 14].[6]

In making this argument, Vanquish United States is calling on the Court to apply the "discovery rule," a longstanding common-law rule in Tennessee. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). Under this rule, a statute of limitations begins to run from the time that "a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996) (citation omitted). But the question of whether a plaintiff has met this standard is factual in nature, and it is therefore improper for the Court's consideration at this stage of the litigation. *See Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503, 509 (Tenn. 2012) ("The question of whether a plaintiff has exercised reasonable diligence and care in discovering that he has a cause of action . . . is a question of fact." (citing *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995))). The Court declines to dismiss Mr. Koshani's claim as untimely.

### D. Count Three: Conversion

In Count Three, Mr. Koshani pleads that Vanquish United States converted his money and assets for its personal use. [Am. Compl. ¶¶ 74–78]. In requesting dismissal of

---

[6] Under the *Erie* doctrine, the question of whether a plaintiff has timely brought a claim under a statute of limitations is a question of state substantive law, not federal procedural law. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110–112 (1945); *Reeve v. Dalkon Shield Claimants Tr.*, No. 98-5833, 1999 WL 644164, *1 (6th Cir. Aug. 16, 1999).

this claim, Vanquish United States again relies on the three-year statute of limitations, maintaining that Mr. Koshani should have been aware of the alleged conversion once he no longer received payments beginning in August 2012. [Defs.' Br. at 14–15]. But again, this argument requires the Court to prematurely consider and address factual issues under the discovery rule—and this is if the Court assumes that Vanquish United States can permissibly rely on the discovery rule to challenge Mr. Koshani's claim of conversion in the first place. *Cf. Pero's Steak & Spaghetti House*, 90 S.W.3d at 624 (holding that—in the absence of fraud—the statute of limitations for a claim of conversion of a negotiable instrument accrues when an "instrument is negotiated," not when a plaintiff should have known of an injury). The Court will decline to dismiss Mr. Koshani's claim as untimely.

### E. Count Four: Unjust Enrichment

In Count Four, Mr. Koshani alleges that Vanquish United States wrongfully retained the funds that he invested toward the parties' performance of the NAT contract. [Am. Compl. ¶¶ 79–82]. Vanquish United States asserts that Mr. Koshani should have learned of his right to bring this claim in August 2012 and that this claim is time-barred under the three-year statute of limitations. [Defs.' Br. at 16]. The Court will again decline to consider this argument here at the pleading stage.

### F. Count Five: Equitable Accounting

In Count Five, Mr. Koshani alleges that he is entitled to an equitable accounting, premising this claim on the fiduciary duty that he broached in Count Two and that he believes springs from the Joint Venture Agreement and the Profit Sharing Agreement in

14

tandem. [Am. Compl. ¶¶ 83–87]. For the same reasons "established . . . in demonstrating that Count Two should be dismissed," Vanquish United States requests the dismissal of the claim for equitable accounting in Count Five. [Defs.' Br. at 16]. For the same reasons that the Court declined to dismiss Count Two, it also declines to dismiss Count Five.

### G. Counts Six through Nine

In Counts Six through Nine, Mr. Koshani claims breach of duty of care, breach of duty of loyalty, breach of duty of trust, and usurpation of corporate opportunities, respectively. [Am. Compl. ¶¶ 88–108]. In pursuing dismissal of these claims, Mr. Barton maintains that they are untimely because they "are in tort," which makes them subject to the three-year statute of limitations. [Defs.' Br. at 18]. But the discovery rule governs nearly all types of tort claims, *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458 (Tenn. 2012); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975), and the Court must therefore decline to address the factual issues that are necessary to resolve Mr. Barton's argument under the statute of limitations.

### H. Count Ten: Breach of the Covenant of Good Faith and Fair Dealing

In Count Ten, Mr. Koshani alleges that Mr. Barton—as a party to the Joint Venture Agreement and Profit Sharing Agreement—breached the covenant of good faith and fair dealing, [Am. Compl. ¶¶ 109–117], which is part of every contract, *see Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) ("[T]here is implied *in every contract* a duty of good faith and fair dealing[.]" (quotation omitted)). In requesting dismissal of this claim, Mr. Barton renews the argument that he made in

15

pursuing dismissal of Count One—the absence of a valid contract, or more specifically, the absence of essential terms. [Defs.' Br. at 24]. For the same reasons that the Court declined to dismiss Count One, it also declines to dismiss Count Ten.

### I. Count Eleven: Accounting

In Count Eleven, Mr. Koshani maintains that he is entitled to an accounting not under the Joint Venture Agreement or the Profit Sharing Agreement but exclusively under the Commercial Code of Afghanistan—which, according to Mr. Koshani, states that "[a] partner . . . shall have the right to get information on the company affairs and its financial status." [Am. Compl. ¶ 119]. Mr. Barton argues that dismissal of this claim is appropriate because the Commercial Code of Afghanistan "does not create a duty" requiring him to provide an accounting to Mr. Koshani. [Defs.' Br. at 24]. In the Court's view, Mr. Barton implicates the venerable *Erie* doctrine with this argument.

Mr. Koshani alleges that the Court has subject matter jurisdiction over his claims under 28 U.S.C. § 1332, [Am. Compl. ¶ 10], which allows the Court to exercise subject matter jurisdiction over state-law claims if complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a). Under the *Erie* doctrine, "[a] federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citations omitted). That law is of course Tennessee law in this case.

Indeed, the parties have not otherwise agreed to a choice-of-law provision in either the Joint Venture Agreement or the Profit Sharing Agreement. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("[I]n a diversity action, we . . . generally enforce the parties' contractual choice of governing law.") (citations omitted)). Without this provision, the Court has no basis to apply anything other than substantive Tennessee law, and any assertion differently is antithetical to the *Erie* doctrine. *See United States v. Anderson Cty.*, 761 F.2d 1169, 1173 (6th Cir. 1985) ("Under the *Erie* doctrine, a federal court sitting in diversity is *obligated* to apply the substantive law of the forum state." (emphasis added) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938))); *see also 1704 Farmington, LLC v. City of Memphis*, 667 F. Supp. 2d 797, 803 (W.D. Tenn. 2009) ("[A] federal court is *bound* to apply the substantive law of the forum state as if the action had been brought in a state court of the jurisdiction where the federal court is located." (emphasis added) (footnote omitted)).

The Court therefore agrees with Mr. Barton's contention that—for the purpose of this action—the Commercial Code of Afghanistan "does not create" a cognizable duty requiring Mr. Barton to provide Mr. Koshani with an accounting. [Defs.' Br. at 24]. As a result, the Court will dismiss this claim.

**J. Prayer for Relief: Punitive Damages**

In Mr. Koshani's prayer for relief, he claims that he is entitled to recover punitive damages against Mr. Barton and Vanquish United States. [Am. Compl. at 26]. Defendants turn to Tennessee's common law in an effort to scuttle this claim, pointing out that "[i]t is

17

the general rule in Tennessee that punitive damages are only allowable in cases involving torts" and "are not generally allowed in cases founded on breach of contract." [Defs.' Br. at 25 (quoting *Mullins v. Golden Circle Ford, Inc.*, 1986 WL 3937, at *4 (Tenn. Ct. App. Apr. 1, 1986))].

Defendants correctly point out the rule to the Court: a plaintiff *generally* cannot recover punitive damages for a breach of contract. *Mullins*, 1986 WL 3937 at *4. But they make no attempt to explain whether Mr. Koshani's breach of contract claims fall within the general slough of breach of contract claims—an explanation that the Court considers necessary because Tennessee's rule does not read as a categorical one. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (stating that a party's legal brief "shall include . . . legal grounds which justify the ruling sought from the Court").

As for Mr. Koshani's tort claims, Defendants again correctly identify the proper rule for the Court: a plaintiff generally *can* pursue punitive damages for certain actions in tort. *Mullins*, 1986 WL 3937 at *4. This rule does not favor their cause, and to circumvent it, they again invoke the three-year statute of limitations as a basis for dismissal, claiming that Mr. Koshani should have known of his right to recover punitive damages no later than August 2012. [Defs.' Br. at 25]. The Court will again refuse to delve into the factual

issues that underlie Defendants' argument, and it will decline to dismiss Mr. Koshani's request for punitive damages.

## IV. Conclusion

Mr. Koshani has alleged sufficient facts to support his claims in some respects but not in others. Defendants' Motion to Dismiss [doc. 43] is therefore **GRANTED in part and DENIED in part**. The Court orders as follows:

1. Paragraphs 65(b) and 65(c) of the Amended Complaint are **DISMISSED**.
2. Count Eleven is **DISMISSED**.
3. Defendants' motion is **DENIED** in all other respects.
4. Within twenty-one days from the date of this Order, Defendants **SHALL** serve a responsive pleading.

**IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge