## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SHAFIQULLAH KOSHANI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-cv-265 |
| | ) | |
| v. | ) | Judge Thomas W. Phillips |
| | ) | |
| ERIC WAYNE BARTON and VANQUISH | ) | Magistrate Judge H. Bruce Guyton |
| WORLDWIDE L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

In this action, Plaintiff seeks to enforce Defendants' contractual and other legal obligations to share profits with him on business the parties agreed to conduct together as partners in Afghanistan. For nearly ten months, Defendants have failed to produce any meaningful discovery pertaining to financial information. They have produced no documents about their revenues and expenses except for a partial general ledger specially-generated for this litigation. They have produced only a summary document regarding their overhead. They have produced no documents at all regarding profits or taxes paid beyond what they provided to Plaintiff in 2011 and 2012 and or what Defendants did with the money received from work in Afghanistan which they failed to share with Plaintiff. Defendants have failed to provide sworn interrogatory answers or testimony on any of these topics and, on June 15, 2018, produced an unprepared witness to testify on these topics.

Defendants' refusal to provide discovery of relevant financial information is based on conclusory objections of overbreadth, undue burden, and disproportionality. Defendants waived those objections by failing to assert them specifically, but they are without merit in any event. Moreover, Defendants have failed to supplement any of their November 2017 responses to

Plaintiff's written discovery despite (1) a February 2017 discovery conference with the Court; (2) the Court's denial of their Motion to Bifurcate and for Protective Order on which they based their principal objections; (3) the Court's review of the same requests here at issue and direction that Plaintiff narrow only four of them, which Plaintiff promptly did; and (4) Defense counsel's own April 30, 2018 promise to supplement many of these very responses, which it never did. Defendants' continued refusal to respond, meaningfully or at all, to Plaintiff's requests is not substantially justified and warrants sanctions.

Accordingly, Plaintiff respectfully requests that the Court compel Defendants to provide the discovery sought herein and award Plaintiff fees and expenses for this Motion and the re-opening of the depositions of Vanquish and Mr. Barton.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth in his Amended Complaint (Doc. 41), Plaintiff's claims are based upon Defendants' violation of contractual, fiduciary and other obligations arising from a joint venture partnership to conduct business together in Afghanistan and share profits. Among the relief Plaintiff seeks is (1) his share of the profits on business in Afghanistan; (2) damages reflecting his capital and non-monetary contributions to the business; and (3) imposition of a constructive trust on Vanquish revenues and distributions to Mr. Barton.

On September 18, 2017, Plaintiff served his First Sets of Interrogatories and Requests for Production of Documents on Defendants. (Exhs. A, B, C & D.) On October 18, 2017, Defendants served objections accompanied by partial or incomplete responses to certain of the requests, but no substantive response at all to most of the requests. The same day, Defendants filed a Motion to Bifurcate and for Protective Order asking the Court to "order separate trials of the liability and damages elements of Plaintiff's claims" and to "enter a Protective Order staying

discovery on the issue of damages until the conclusion of the liability trial." (Doc. 28.)
Defendants supplemented their written discovery responses on November 10, 2017, correcting
some deficiencies (such as the lack of a sworn verification of any of the interrogatory responses)
but still refusing to provide any substantive response to most of the requests citing the Motion to
Bifurcate. (Exhs. E, F, G & H.) These remain the last responses Defendants served to any of
these interrogatories or document requests.

Plaintiff brought Defendants' refusal to provide discovery to the Court and the parties
had a telephone discovery conference with the Court on February 27, 2018. During the
conference, the Court challenged Defendants' assertion they could withhold responses while
their Motion to Bifurcate was pending, but Defendants argued the requests were overly broad in
light of Plaintiff's Amended Complaint, filed February 9, 2018. Plaintiff disputed that
contention and the Court asked Plaintiff to provide it with copies of the requests and responses
for it to review. Shortly thereafter, on March 5, 2018, the Court denied Defendants' Motion to
Bifurcate (Doc. 47), mooting Defendants' blanket objection to discovery. The next day the
Court entered an Order stating it had "reviewed Plaintiff's discovery requests and finds that
Plaintiff's document requests (Nos. 6 and 7 to Defendant Eric Barton and Nos. 15 and 16 to
Defendant Vanquish Worldwide, LLC) … are overbroad. They shall be more narrowly tailored
to reflect the claims made in the Amended Complaint." (Doc. 48 at 2.)

On March 8, 2018, Plaintiff narrowed the requests the Court identified to agreements or
transactions relating to work or business in Afghanistan. Defendants did not produce anything in
response to the narrowed requests. Further, Defendants refused to supplement any of their prior
interrogatory responses and refused to provide any of the documents requested, maintaining
Plaintiff's requests were overly broad. On April 30, 2018, in a telephone discussion which

Plaintiff's counsel confirmed by email (Exh. I), Defendants' counsel finally agreed to respond fully to Interrogatory Nos. 1-2 and 10 to Vanquish; Document Request Nos. 1-5, 9-10, and 15-17 to Vanquish; and Document Request Nos. 1-2, 4 and 6-7 to Mr. Barton. The same day, Plaintiff narrowed Request Nos. 6-8 and Interrogatory Nos. 3-4 and 6-7 to Vanquish to matters relating to business in Afghanistan. Plaintiff stood on all other requests as originally phrased.

Over the course of May, Defense counsel repeatedly promised to supplement Defendants' discovery. Defendants first promised to supplement by May 4, 2018. Defense counsel then stopped responding to emails or phone calls. When Defense counsel finally responded, he promised June 1; then June 4; and then June 7. Finally, on June 8, Defendants provided a partial supplemental production of documents. Four days later, on June 12, Defendants provided an additional supplemental production of documents. With respect to the document requests at issue in this Motion, the only document Defendants produced was a truncated subset of Vanquish's general ledger entries that Defendants specially created for this litigation from their accounting records. Defendants served no supplemental responses to any of the interrogatories.

Meanwhile, on April 12, 2018, Plaintiff noticed a deposition of Vanquish, identifying eight topics on which it sought testimony, including Vanquish's "profit on any business, projects, grants or other work in or relating to Afghanistan from December 2010 to the present" (Topic 4) and Vanquish's "allocation of overhead, general and administrative, bid and proposal and other costs to specific contracts and/or projects from December 2010 to the present" (Topic 6). (Exh. J at 3.) Vanquish did not object to these, or any other noticed topic. However, on June 15, the witness produced by Vanquish on Topics 4 and 6 was unable and unprepared to answer questions on those topics. As a result, Plaintiff suspended the deposition to address these issues as well as Defendants' failure to answer related interrogatories. Prior to the June 26 discovery

conference call with the Court, Defendants agreed to re-open the Rule 30(b)(6) deposition to address "stuff you don't have" but has not committed to producing a prepared witness.

In the course of testimony on another topic at the Vanquish deposition on June 15, Vanquish made reference to an alleged loan agreement between it and Plaintiff. Plaintiff asked whether any document existed memorializing such an agreement, and the witness testified that there was such a document. When Plaintiff's counsel requested that Defendants produce it, Defendants' counsel made a call to his office and shortly thereafter his office provided two documents entitled "Loan Modification Agreement" (one dated April 5, 2012 and the other dated "May __, 2012") purporting to be between Plaintiff and Vanquish, and purporting to have been signed by Plaintiff and by Mr. Barton. Before that moment, Defendants had not produced or identified either document in discovery. After initially refusing, Defendants agreed to re-open Mr. Barton's deposition to ask about the purported "loan modification" documents but have refused to extend that to any matters presented by any documents or interrogatory responses Defendants may ultimately provide as a result of the instant Motion.

The parties participated in a discovery conference with the Court on June 26, 2018, and the Court entered an Order on June 29 granting Plaintiff leave to file this Motion to Compel. (Doc. 62.)

## ARGUMENT

## I. THE COURT SHOULD COMPEL DEFENDANTS TO RESPOND TO PLAINTIFF'S INTERROGATORIES AND DOCUMENT REQUESTS

### A. Defendants Waived Any Objections by Failing to State Them with Specificity

Defendants objected to each and every one of the interrogatories and document requests at issue in this Motion on identical grounds, each time stating their purported objections in identical conclusory language. Specifically, Defendants' November 10, 2017 supplemental

5

responses to each request at issue all stated as follows:

> **Response:** [Barton / Vanquish Worldwide, LLC] objects to this [Interrogatory / Request] for the reasons articulated in Defendants' October 18, 2017 Motion to Bifurcate and for Protective Order. [Barton / Vanquish Worldwide, LLC] further objects to this [Interrogatory / Request] because it exceeds the scope of discovery allowed by F.R.C.P. 26(b)(1) because the [Interrogatory / Request] is overbroad, unduly burdensome, and not proportionate to the needs of the case.

(*See* Exhs. E, F, G & H.)[1]

These are improper boilerplate objections, unaccompanied by any explanation as to *why or how* the request is overly broad, unduly burdensome or not proportionate to the needs of the case. *In re Haynes*, 577 B.R. 711, 723-25 (Bankr. E.D. Tenn. 2017). Rules 33 and 34 both require that "the grounds for objecting … must be stated with specificity." Fed. R. Civ. P. 33(b)(4); *see also* Fed. R. Civ. P. 34(b)(2)(B) ("the response must … state with specificity the grounds for objecting to the request, including the reasons"). "[T]he mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection"; "[o]n the contrary, the party resisting discovery must show specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *In re Haynes*, 577 B.R. at 724 (quoting *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)).

A boilerplate objection is as an objection that "merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 170-71 n.1 (N.D. Iowa 2017) (quoting Matthew L.

---

[1] Mr. Barton's objections to Document Request Nos. 6-8 each contained a cut-and-paste error through which he repeated the phrase "exceeds the scope of discovery allowed by F.R.C.P. 26(b)(1)[.]" (*See* Exh. F at pp. 4-5.)

Jarvey, *Boilerplate Discovery Objections: How They are Used, Why They are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 914–16 (2013)). "These objections are taglines, completely devoid of any individualized factual analysis." *Id.* The use of boilerplate objections "obstructs the discovery process, violates numerous rules of civil procedure and ethics, and imposes costs on litigants that frustrate the timely and just resolution of cases." *Id.* at 185.

Accordingly, the Court should not entertain Defendants' conclusory, boilerplate objections because they failed to properly assert them with the specificity required by the Rules and they are, therefore, waived. *See* Fed. R. Civ. P. 33(b)(4); *see also Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-CV-11783, 2011 WL 669352 at *2 (E.D. Mich. Feb. 17, 2011) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."); *Henry v. Nat'l Housing P'ship*, 2007 WL 2746725 at *1 (N.D. Fla. 2007) (finding that the law is "well settled" that a party's failure to file timely objections to a request for production of documents constitutes a waiver of the objections).

### B. Even If They Did Not Waive Their Objections, Defendants Cannot Meet Their Burden to Resist Discovery

Where, as here, a party does not object to the relevance of the information sought,[2] the parties resisting discovery—*i.e.*, Defendants—have the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive, … by submitting affidavits or offering evidence revealing the nature of the burden." *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y. 2012) (internal quotation omitted); *see also Hunley v. Glencore Ltd., Inc.*, 2013 WL 1681836 at *2 (E.D. Tenn. April 17, 2013 (Guyton, J.) ("When the

---

[2] Defendants did not assert an objection to any of the requests at issue on the grounds the information sought was irrelevant. They only objected that the requests were "overbroad, unduly burdensome, and not proportionate to the needs of the case."

Case 3:17-cv-00265-RLJ-HBG   Document 72   Filed 07/13/18   Page 7 of 23   PageID #: 1759

discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure."); *Grant, Konvalinka & Harrison, P.C. v. United States*, 2008 WL 4865566 at *4 (E.D. Tenn. Nov. 10, 2008) (distinguishing situation where a party has asserted relevance objection in response to discovery request).

The 2015 amendments to Rule 26(b)(1) do not alter the burden of the party resisting discovery; Defendants "still must specifically object and must still show that the requested discovery does not fall within Rule 26(b)(1)'s broad scope of relevance or would impose an undue burden or expense or is otherwise objectionable." *United Parcel Serv. Co. v. DJN Logistic Group, Inc.*, 2018 WL 3199475 at *9 (W.D. Ky. April 16, 2018). "A party who seeks to avoid disclosure of requested materials 'bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury.'" *Invesco Inst'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (quoting *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985)).

As set forth in the following sections, none of the interrogatories or document requests at issue are overly broad, unduly burdensome or disproportionate to the needs of the case.

1.    <u>Contracts and/or Grants Defendants Bid on and/or Were Awarded</u>

Plaintiff's Interrogatory No. 3 to Vanquish asks it to identify all contracts and/or grants on which it has bid from December 18, 2010 to the present. Interrogatory No. 4 asks Vanquish to identify all contracts and/or grants it has been awarded during the same time period. On April 30, 2018, Plaintiff agreed to narrow both interrogatories to contracts, grants or projects to be performed in Afghanistan or involving persons or entities located in Afghanistan. (Exh. I.)

Defendants have never provided a supplemental response to either interrogatory.

Interrogatory Nos. 3 and 4 to Vanquish go directly to the heart of the case. Plaintiff alleges Defendants violated their obligations to him by seeking and obtaining contracts for work in Afghanistan for themselves rather than for the benefit of the partnership. Defendants have produced documents relating to the NAT contract and other contracts in Afghanistan, but they have never provided sworn responses to these interrogatories. They agreed to provide responses nearly three months ago, but inexplicably have failed to ever do so. There is no justification or excuse for Defendants' continued failure to respond to these interrogatories.

2.    General Ledger Accounting Data

Plaintiff's Document Request No. 1 to Vanquish asks it to produce its "full general ledger" for the period from December 18, 2010 to the present and Interrogatory No. 2 to Vanquish asks for the definitions for all "general ledger accounts" for the same period. Despite their initial objections, on April 30, 2018, Defense counsel agreed to produce the requested documents. Defendants never did so. The only thing Defendants have produced is an image of a portion of Vanquish's general ledger, for the period from 2011 to 2015, comprised of the general ledger detail associated with Afghanistan contract work which Vanquish generated from its accounting system (the same system it has used since 2011).

Any determination of revenues, expenses and profits requires analysis of the full general ledger detail. The partial version of the ledger Vanquish provided included only direct revenues and expenses; it does not include indirect expenses or any of information relating to assets (*e.g.*, outstanding receivables or claims), liabilities (*e.g.*, loans or unpaid subcontractors or vendors) or equity (*e.g.*, owner's investments and distributions). (Exh. L, Jackson Decl. ¶ 8.) As acknowledged by Vanquish's Rule 30(b)(6) representative, its CFO, one cannot use this

9

document to calculate the profits on any contract.[3]  (Exh. K, A. Love Depo. at 9:10-11:24.)

Further, the extracted ledger detail only goes through 2015, leaving out a substantial amount of revenue Vanquish later booked for the NAT contract based upon claims submitted to the Government.  (Exh. K, A. Love Depo at 25:15-26:6; Exh. K-S (sealed) at 28:21-29:12; Exh. L, Jackson Decl. ¶ 10.)  The partial report also contains no data or information relevant to indirect costs.  Vanquish has provided summary information regarding indirect costs in another document, but without the full general ledger detail there is no way to assess the accuracy or completeness of that information.  (Exh. L, Jackson Decl. ¶ 9.)

Without the full general ledger detail there is no way to assess the accuracy or reliability of the partial report Vanquish has provided.  Is everything included that should be, or is there anything that is included which should not be?  There is no way to make that determination without the full detail.  (Exh. L, Jackson Decl. ¶ 11.)  The full general ledger detail also is needed to determine whether any revenues or expenses attributed to the relevant projects are overstated or understated as a result of the company's accounting approach.  As explained by Plaintiff's expert, Mr. Jackson, it is not uncommon for a company to reallocate profits on a given contract or project to another source by booking as expenses transfers to other areas of the company, such as the home office or another revenue center or division that may (or may not) have performed services in connection with the contract or project.  (*Id.* ¶ 12.)  Without the full ledger detail, one cannot determine whether this has happened and how it should be accounted for.

The full general ledger information thus is needed to perform a complete analysis, but the

---

[3] The format in which Defendants produced the document also makes it un-useful.  Instead of producing it in Excel format (the form in which Vanquish generated it), Vanquish produced it as a series of tiff images, precluding any data analysis other than with pencil, paper and a calculator.  Both sides have produced in discovery a "General Ledger Detail" report as of December 31, 2011 that Vanquish generated from its Deltek accounting system on March 22, 2012, which Mr. Barton emailed to Mr. Koshani on March 30, 2012.  Vanquish should simply produce the same report for 2012 forward.

full ledger is also needed to cross-check the detail against other statements or information about Vanquish's accounting and financials. Such a comparison is necessary to identify any discrepancies or gaps and also to determine whether any transactions warrant scrutiny for how they were categorized or allocated as compared to other transactions and thus overstated or understated revenue or expenses in one area versus another. (Exh. L, Jackson Decl. ¶¶ 11-12.)

Finally, Defendants have offered to explanation for their refusal to respond to Interrogatory No. 2. Plaintiff obviously needs the definitions of the various general ledger accounts to make any meaningful use of the general ledger or any sub-component thereof.

Accordingly, Plaintiff's request for the full general ledger is not overly broad—the full ledger is needed to perform a complete, reliable analysis of the revenues, expenses and profits on the Afghanistan business at issue in this case. *See Lehman v. Eldridge*, 2013 WL 12059612 at *1 (S.D. Fla. Jan. 7, 2013) (granting motion to compel production of general ledgers and tax returns for franchise restaurants, even though not those owned by plaintiffs, as relevant to inform plaintiffs' damages claims and needed to "test information provided").

Plaintiff's request is not unduly burdensome—it is less burdensome for Vanquish to produce the full ledger in a usable form than it is for Vanquish to construct a partial leger in a different, less useable form, solely for purposes of this litigation.

And Plaintiff's request is not disproportionate to the needs of the case. The proper analysis of and accounting for revenues, expenses and profits on the Afghanistan business is the issue at the heart of the case. That business involved multiple contracts on which Vanquish has booked revenues in excess of $40 million. Plaintiff's Amended Complaint estimated the profits due him as being more than $5.5 million and the minimal discovery Plaintiff has been able to obtain to date indicates the amount owed him is much more than that.

### 3. Revenues, Expenses and Profits

Plaintiff's Interrogatory Nos. 6 and 7 to Vanquish ask it to identify by year and by contract, respectively, its revenue, expenses, gross profit and net profit for the period from December 18, 2010 to the present. Plaintiff's Document Request Nos. 6, 7 and 8 to Vanquish ask it to produce documents sufficient to show (by contract, grant or project) the total revenue, total expenses and total profits, respectively, on contracts, grants, and projects for the same period. On April 30, 2018, Plaintiff agreed to narrow both interrogatories to contracts, grants or projects to be performed in Afghanistan or involving persons or entities located in Afghanistan. (Exh. I.) Defendants have never provided a supplemental response to either interrogatory.

The revenues, expenses and profits on contracts or projects in Afghanistan are the very subject of Plaintiff's damages claims. Plaintiff's simple interrogatories asking Vanquish to identify this basic information are in no way "overbroad, unduly burdensome and not proportionate to the needs of the case." This is the very heart of the case. Yet Vanquish has refused to respond.

Further, the documents sufficient to show revenues, expenses and profits on the Afghanistan projects also goes directly to the heart of the case. There is no valid basis for refusing to produce this information, and it is essential to any analysis of Vanquish's financial records. (Exh. L, Jackson Decl. ¶¶ 15-16.)

### 4. Financial Statements and Reports

Plaintiff's Document Request No. 2 to Vanquish asks for its "quarterly financial statements, including but not limited to balance sheets, statements of profits and losses, and any associated notes or explanations" for the period from December 18, 2010 to the present and Plaintiff's Document Request No. 1 to Mr. Barton and No. 3 to Vanquish ask for "audit reports and/or audited financial reports" for the same period. After initially objecting, on April 30,

2018, Defense counsel agreed to produce the requested documents.  Defendants never did so.

Vanquish's assertion of undue burden is completely without basis.  According to its Rule 30(b)(6) representative, its CFO, Vanquish generates financial statements monthly and saves them on a shared drive, the "X: drive" in the CFO folder.  (Exh. K, A. Love Depo at 43:23-45:19.)  Those reports include a "Contract Revenue Summary" that reports revenues and costs for each contract.  (*Id.* at 45:20-46:1.)  Vanquish has not produced any of these reports *despite that they are already generated and sitting in a file on its computer system*.

Vanquish's overbreadth and disproportionality objections are also without merit. Whether or not summary in nature, Vanquish's periodic financial statements are needed to reconcile or cross-check data from other sources and analysis of other, more specific subjects. They may contain relevant notes or explanations.  Further, any audit reports or audited statements may reveal abnormal activity or potential issues with Vanquish's accounting entries or approaches.  (Exh. L, Jackson Decl. ¶¶ 17-18.)  This is basic financial information needed to inform any analysis of revenues, expenses and profits.

5.      Payments, Compensation, Loans or Other Transfers to Mr. Barton

Plaintiff's Interrogatory No. 3 to Mr. Barton and No. 9 to Vanquish ask Defendants to identify all "distributions, payments, assignments or other transfers of money or anything else of value" by Vanquish to, on behalf of, or for the benefit of Mr. Barton from December 18, 2010 to the present.  Plaintiff's Document Request Nos. 5, 6 and 7 to Mr. Barton and 14, 15 and 16 to Vanquish then request production of documents relating to such transfers, agreements with any "related entity" (*i.e.*, one in which Mr. Barton has an ownership interest or with which he is otherwise associated or affiliated) and documents relating to any transactions with such related entities.  Finally, Plaintiff's Document Request No. 13 to Vanquish requests all agreements to

13

loan money to others.

Defendants have never provided a response to or produced any documents responsive to any of these requests.[4]  Payments of any kind to or for the benefit of Mr. Barton are relevant and discoverable for a number of reasons.  Whether and to what extent Vanquish treated such payments as expenses is relevant to the profit calculations.  Was any salary reasonable, and if Vanquish paid Mr. Barton a salary how should that be treated in calculating what was owed to Mr. Koshani (who did not receive a salary).  Did Vanquish make payments purportedly for consulting services, rent, or other goods or services to other entities associated with Mr. Barton?  Were any expenses Mr. Barton charged to the company appropriate and business-related?  (Exh. L, Jackson Decl. ¶¶ 19-20.)  These are not hypothetical questions.  The discovery in this case already includes evidence that Vanquish paid for haircuts, Netflix service, insurance premiums to a company from which Vanquish has never had a policy, and mortgage payments despite that Vanquish has never had a mortgage on any property.  (Exh. K, A. Love Depo at 72:13-76:13.)

Further, the extent to which Mr. Barton already has received profits from the Afghanistan projects through salary, distributions, or other mechanisms is information relevant Defendants' breach of their obligations to Plaintiff and the determination of the amount of profits owed to him.  (Exh. L, Jackson Decl. ¶ 19.)  Indeed, the nature, amounts, and timing of any such payments is even more relevant in light of Defendants' contentions that the profit on any of the NAT contracts cannot yet be determined and it does not yet have any obligation to distribute profits.  (*See* Doc. 54, Def. Memo ISO Motion for Summary Judgment at 9.)  The fact, amount

---

[4] On March 8, 2018, at the Court's request, Plaintiff narrowed the document requests referencing related entities, *i.e.*, Nos. 6 and 7 to Mr. Barton and 15 and 16 to Vanquish, to agreements or transactions relating to (a) contracts or business projects (actual or potential) to be performed in Afghanistan or involving persons or entities located in Afghanistan; (b) revenues or profits related to contracts or projects within the scope of (a); and/or expenses of or investments in contracts or projects within the scope of (a).  On April 30, 2018, Defense counsel agreed to produce documents responsive to these requests, as narrowed.  Defendants never did so.

14

and timing of payments received by Mr. Barton undercuts that claim by Defendants.

6. <u>Tax Returns</u>

Plaintiff's Document Request No. 2 to Mr. Barton and Document Request No. 5 to Vanquish ask for tax returns from December 18, 2010 to the present. Interrogatory No. 10 to Vanquish asks it to identify all "accounting or tax professionals" used during the same period. After initially objecting, on April 30, 2018, Defense counsel agreed to produce the requested documents. (Exh. I.) Defendants never did so. The only explanation Defense counsel has offered is that he reviewed the tax returns and found that they did not include any information specific to the NAT contract or work in Afghanistan.

First, Vanquish maintains copies of tax returns (Exh. K, A. Love Depo at 47:4-6), so there is no undue burden.

Second, the tax returns are relevant discoverable because they reflect an ultimate statement by Defendants to the Government regarding the financial information of the business, subject to financial and legal liability, that provides an important check on what the company may show in its books and records. Whether they have project-specific information or not (at least 2011, and likely 2012, would *only* have information on Afghan contracts as the NAT contract was the only work Vanquish had in those years), the tax returns will contain overall financial information that is needed as a cross-check against any analysis of profits of a specific component of the business. Exh. L, Jackson Decl. ¶ 23; *see also Lehman v. Eldridge*, 2013 WL 12059612 at *1 (S.D. Fla. Jan. 7, 2013) (granting motion to compel production of general ledgers and tax returns for franchise restaurants, even though not those owned by plaintiffs, as relevant to inform plaintiffs' damages claims and needed to "test information provided"). The tax returns also will have information about executive compensation, relevant and discoverable for all of the

reasons set forth in the preceding section.

Accordingly, the Court should order Defendants to produce their tax returns for 2011 forward. *Lehman*, 2013 WL 12059612 at *1; *EEOC v. SCI Tenn. Funeral Servs., Inc.*, 2006 WL 8434923 (W.D. Tenn. June 30, 2006) (ordering production of tax returns and rejecting argument for qualified privilege).

7. <u>Assets, Accounts and Loans</u>

Plaintiff's Interrogatory No. 8 to Vanquish asks it to identify its assets; Interrogatory No. 2 to Mr. Barton and No. 5 to Vanquish ask them each to identify their respective accounts, lines of credit and loans; Document Request No. 8 to Mr. Barton and No. 11 to Vanquish ask them each to produce any applications or submissions to lenders; and Document Request No. 12 to Vanquish asks it to produce documents relating to financial responsibility determinations by the U.S. Government, all for the period from December 18, 2010 to the present. Defendants have made no response to any of these requests.

Information relating to assets, accounts and lines of credit, and loans (and applications for credit) are relevant to the assessment of Defendants' ability—absent Mr. Koshani's investments and contribution—to pursue, obtain and perform the NAT contract in the first place. This information is needed to demonstrate that Defendants, in fact, could not have even put forth a viable bid for the NAT contract without Mr. Koshani, showing the critical nature of his role and contribution, that Mr. Koshani was involved as a partner (not a potential subcontractor), and Defendants' enrichment as a result. Further, this information is also needed to identify any other potential avenues through which Mr. Barton or others affiliated with him may have removed money from the company which should properly be considered as part of the revenue or profits on the projects at issue, or distributions or proceeds from those projects already received by Mr.

16

Barton.  (Exh. L, Jackson Decl. ¶ 24.)

Further, Defendants' statements or submissions to the Government in connection with its financial responsibility determinations are discoverable for the same reasons.  As part of any bid for a government contract, a potential contractor must provide financial information enabling the Government to make a financial responsibility determination, meaning that the contractor has the wherewithal to perform the contract it is bidding on.  Typically this involves statements regarding the company's balance sheet and its funding arrangements for the contemplated contract.  A contractor thus will often tout its teaming or joint venture partners in this context in addition to making statements about its own finances.  (Exh. L, Jackson Decl. ¶ 26.)

In addition, applications for loans or lines of credit and submissions in connection with financial responsibility determinations also would contain statements about Defendants' finances, the consistency of which with the other financial records would be important to consider.  (Exh. L, Jackson Decl. ¶¶ 25-26.)

8.     Documents Identified or Referenced in Interrogatory Responses

Plaintiff's Document Request No. 10 to Mr. Barton and Request No. 19 to Vanquish ask them each to produce any document identified or referenced in their interrogatory responses. Defendants did not object to either request separate from the objections they asserted to the interrogatories, but they have managed to avoid compliance with this request simply by never answering any of the interrogatories at issue.  Accordingly, the Court should compel Defendants to produce any and all documents they identify or reference in their interrogatory responses (either previously or as supplemented as a result of this motion or otherwise).

* * * * *

The foregoing interrogatories and document requests were served nearly ten months ago,

17

on September 18, 2017.  Defendants have not responded to any of the interrogatories and have produced only limited documents in response to some of the request while failing to produce anything in response to most of them.  The Court already reviewed these requests in February, Plaintiff narrowed a number of them, and Defense counsel even promised to respond to some of them.  Defendants never did so.  Such a blatant, willful delay constitutes is a discovery violation warranting sanctions.  *See Stooksbury v. Ross*, 2014 WL 417508 at *4 (E.D. Tenn. Feb. 4, 2014) (finding an "exorbitant delay" and imposing sanctions when nine months passed without full discovery compliance).

## II.      DEFENDANT VANQUISH'S FAILURE TO PRODUCE A PREPARED RULE 30(b)(6) WITNESS IS BASELESS AND WARRANTS SANCTIONS

The deposition of Vanquish commenced on June 15, 2018, but the witness Vanquish produced on Topics 4 and 6 was not prepared *at all* to testify on either topic.  The witness, Vanquish's CFO, was not prepared to testify to the revenues on the NAT contract (Exh. K, A. Love Depo at 30:2-5) and she was unable to testify as to Vanquish's gross margins (*id.* at 30:10-14, 58:19-59:10).  The witness testified that Vanquish does not calculate profits on contracts until they are closed out, including claims (*id.* at 31:17-21), but she acknowledged that Vanquish determines its net income for purposes of its tax returns (*id.* at 36:12-21) and she testified that she could calculate a profit on a given contract at any point in time (*id.* at 58:2-18, 62:24-64:3.) In the CFO's words, "It's math.  Yes."  (*Id.* at 58:14.)  But she nevertheless did not make any effort to prepare for the deposition by calculating any measure of profit.  (*Id.* at 64:4-15.)

A corporate party served with a Rule 30(b)(6) notice "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] *and to prepare those persons* in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters[.]"

18

*Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986) (Murrian, J.) (emphasis added) (internal quotes omitted). Vanquish failed to do so. By her own testimony, the witness admitted she made no attempt to calculate profits on any contract even though she could have done so and even though Vanquish necessarily does exactly such an exercise for tax purposes. Vanquish's conduct is not merely evasive, it is a stubborn refusal to directly answer the most basic of questions. Vanquish has inexplicably failed to answer Plaintiff's interrogatories on the same topics and put up a witness who willfully made *no effort whatsoever* to be prepared to answer these questions. Failure to adequately prepare a Rule 30(b)(6) witness constitutes a failure to appear warranting sanctions. *Brown v. City of Atlanta*, 284 F. Supp. 3d 1326, 1342-43 (N.D. Ga. 2018).

Defendants have agreed to re-open the Rule 30(b)(6) deposition, but only to address "stuff you don't have." That is insufficient. Plaintiff is entitled to a fully prepared witness to answer questions on Topics 4 and 6. We certainly also are entitled to ask questions based upon documents and interrogatory responses Defendants have failed to provide previously, but Defendants' offer does not address the central issue of its failure to meet its duty to prepare the witness.

## III. THE COURT SHOULD RE-OPEN MR. BARTON'S DEPOSITION

Defendants have agreed to re-open Mr. Barton's deposition, but only with respect to questioning relating to the late-produced documents entitled "Loan Modification Agreement" which Defendants failed to produce until testimony at the Rule 30(b)(6) deposition brought out their apparent existence.[5] Defendants have refused to permit questioning related to any matters

---

[5] Defendants should have identified both documents in response to Plaintiff's Interrogatory No. 5 to Vanquish (asking Vanquish to identify "any and all … lines of credit, or loans to or for [Vanquish] from December 18, 2010 to the present") and produced them in response to Document Request No. 19 (asking for production of any documents identified or referenced in Vanquish's interrogatory responses). The documents also are responsive to Plaintiff's

presented by documents or interrogatory responses Defendants may ultimately provide as a result of the instant Motion.

Defense counsel has stated they do not intend to use or rely on these documents because they are unable to determine whether they are authentic. This is not a valid basis for having failed to produce responsive documents. *See Varga v. Rockwell Intern. Corp.*, 242 F.3d 693, 696 (6th Cir. 2001) ("We take this occasion to emphasize what Rule 26(b) makes perfectly clear: the recipient of a properly propounded document request must produce all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial."). The defendant in *Varga* made a similar argument to Defendants here, and the Sixth Circuit responded that the excuse was "so devoid of merit as to be specious." *See also Whitney v. City of Milan*, No. 09-1127, 2010 WL 2011663, at *2 (W.D. Tenn. May 20, 2010) (rejecting the plaintiff's argument that "*Varga* is inapposite to the present set of facts, because unlike the defendant in *Varga*, she is willing to disclose the subject evidence prior to trial.").

"The failure to produce evidence, without just cause, which is relevant within the context of Rule 26, bears a close relationship to the spoliation of evidence and is sanctioned accordingly." *Alden v. Mid-Mesabi Associates Ltd. Partnership*, No. 06-954, 2008 WL 2828892, at *16 (D. Minn. July 21, 2008) (internal quotations omitted); *see Whitney v. City of Milan, Tenn.*, No. 1:09-cv-1127, 2011 WL 13147426, at *3-4 (W.D. Tenn. Apr. 6, 2011) (awarding attorney's fees discovery violation of withholding evidence). Re-opening discovery is one such appropriate sanction. *Phipps v. Accredo Health Group, Inc.*, 2017 WL 685579 at *6 (W.D. Tenn. Feb. 21, 2017) (issuing alternative sanctions including reopening discovery,

---

Interrogatory No. 1 and Document Request No. 10 requesting identification of communications (and production of relevant documents) between Plaintiff and Vanquish relating to, *inter alia*, Vanquish's operations or finances and/or Plaintiff's interest in and rights with respect thereto.

20

additional briefing, and attorney's fees and expenses); *Cook v. Manny*, No. 1:09-cv-00006, 2011 WL 13124639 at *2 (E.D. Tenn. Jan. 6, 2011) (allowing Plaintiff an additional 7 hours to depose corporate 30(b)(6) representative in light of new document production).

The limitation that Defendants seek to impose on the re-opening of Mr. Barton's deposition is inappropriate and unfair to Plaintiff. Defendants' delay in producing documents and responding to interrogatories is just as egregious as their failure to produce the purported "loan modification" documents because they did not intend to use them in the case. Mr. Barton should have to answer questions raised by or relating to these documents and any other documents or interrogatory responses that Defendants have withheld or failed to provide in discovery.

## IV. THE COURT SHOULD IMPOSE SANTIONS

Sanctions under Rule 37 are proper unless the party's failure to comply with discovery rules was justified or is harmless. *Emanuel v. Cty. of Wayne*, 652 Fed. App'x 417, 424 (6th Cir. 2016). The imposition of sanctions under Rule 37(c)(1) for failure to comply with one's Rule 26(e) obligations to supplement "does not require a showing of bad faith by the offending party." *Card-Monroe Corp. v. Tuftco Corp.*, 270 F. Supp. 3d 967, 1010 (E.D. Tenn. 2017), citing *Emanuel*, 652 Fed. App'x at 424. Bad faith or otherwise, Defendants' counsel had an "affirmative, non-delegable duty to conduct a reasonable inquiry to ensure that Defendant's discovery responses were complete and correct. … As the party seeking to avoid [sanctions] under Rule 37[ ], Defendant bears the burden to show that its failure to comply with the rules was due to inability, not willfulness or bad faith." *Phipps*, 2017 WL 685579, at *4.

Defendants cannot meet this burden here, as they have repeatedly failed to respond to discovery propounded in September 2017, have withheld responsive documents from production,

and produced an unprepared witness for a Rule 30(b)(6) deposition. Such tactics serve only to delay the proceedings, to subject Plaintiff and Plaintiff's counsel to additional expense, including filing this Motion and re-opening depositions. Accordingly, Plaintiff respectfully requests that the Court order Defendants to pay expenses, including attorney's fees, for this motion and the re-opened depositions of Vanquish and Mr. Barton.

## CONCLUSION

For the foregoing reasons, Plaintiff Shafiqullah Koshani respectfully requests that the Court grant Plaintiff's Motion to Compel and award sanctions against Defendants.


Dated: July 13, 2018                         Respectfully submitted,


                                             */s/Tillman J. Finley*
                                             Daniel Marino (*pro hac vice*)
                                             Tillman J. Finley (TN BPR #022790)
                                             Kathrynn F. Benson (*pro hac vice*)
                                             MARINO FINLEY LLP
                                             1100 New York Avenue, N.W.
                                             Suite 700W
                                             Washington, DC 20005
                                             (202) 223 – 8888
                                             (877) 239-2146 (facsimile)

                                             *Counsel for Plaintiff Shafiqullah Koshani*

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing and all attachments thereto have been filed via the Court's Electronic Filing System, which will cause notice thereof to be sent to all counsel of record.

/s/Tillman J. Finley