# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

SHAFIQULLAH KOSHANI,        )
                                 )
Plaintiff,                   )
                                 )      Civil Action No. 3:17-cv-265
v.                       )
                                 )      Judge Thomas W. Phillips
ERIC WAYNE BARTON and    )
VANQUISH WORLDWIDE L.L.C,   )
                                 )
Defendants.              )

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

Defendants, Eric Wayne Barton and Vanquish Worldwide, LLC ("Vanquish – US"), through counsel, hereby file this Response in Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims. In his Motion, Plaintiff seeks summary judgment on Defendants' Counterclaims under Rule 56 of the Federal Rules of Civil Procedure under various theories. Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-25 (1986); *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bennett*, 410 F.3d at 817. Moreover, the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex Corp.*, 477 U.S. at 324. Plaintiff has not carried his burden and his Motion for Summary Judgment on Defendants' Counterclaims should be denied.

# I. COUNTS I, IV, V, VI AND VII ARE TIMELY AND NOT BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

## A. The Counterclaims are Not Time-Barred Pursuant to the Tennessee Tolling Statute for Absence From the State

Plaintiff argues that the Counterclaims in Counts I, IV, V, VI and VII are barred by the statute of limitations. Pl. Mem. In Support of Pl.'s Motion for Summary Judgment at 1 – 3 (Doc. No. 132-2) (hereinafter "Pl. Mem."). Plaintiff, however, has been absent from the State of Tennessee and not subject to the personal jurisdiction of this Court. Thus, under Tenn. Code Ann. § 28-1-111, the statutes of limitations are tolled and have not expired.

The "Absence from the State" tolling statute states:

> If at any time any cause of action shall accrue against any person who shall be out of this state, the action may be commenced within the time limited therefor, after such person shall have come into the state; and, after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the state, the time of absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action.

*Id*. This provision has been interpreted as follows:

> [I]f a cause of action has accrued against any person that shall be out of the state, the plaintiff may commence the action within the time limits governing the cause of action, after the defendant reenters the state. Further, after the cause of action has accrued, and where the defendant shall be absent from or reside outside Tennessee, that time of absence or residence out of state will not count for the time limited for the commencement of the action.

Steven W. Feldman, 22 Tenn. Prac. Contract Law and Practice § 12:86, Tennessee Practice Series, June 2018 update. Moreover, the "statutory policy is to give the claimant the full benefit of the time allowed for bringing a lawsuit." *Id*. (citing *Shelton v. Breeding*, 43 Tenn.App. 609, 310 S.W.2d 469 (1957)).

The Supreme Court of Tennessee explained what it means to be absent from the state for purposes of the tolling statute: "Absence from the state and residence out of the state, in the sense

of the statute, means such absence and such non-residence as renders it impracticable at all times to obtain service of process." *Arrowood v. McMinn County*, 121 S.W.2d 566, 568 (Tenn. 1938).

It is undisputed in this case that Plaintiff has resided outside of Tennessee continuously until the Amended Complaint was filed in February 2018. Def. Response to Plaintiff's Statement of Material Facts Not in Dispute, at ¶ 23 (hereinafter "Def. SOF").[1] It also is undisputed that Plaintiff has not been subject to the personal jurisdiction of this Court until the filing of the Complaint in this matter. Therefore, it has been impracticable for Defendants to obtain service of process on him at any time. And, under § 28-1-111, the statutes of limitations on all of Defendants' claims were tolled until June 20, 2017.

All of Defendants' claims in the Counterclaims thus are timely, and Plaintiff's argument that Counts I, IV, V, VI and VII are barred by limitations should be denied.

## B. There is a Genuine Dispute of Material Fact Concerning When Defendants First Learned of Their Claims Pursuant to the Discovery Rule

Plaintiff argues that Counts I, IV, V, VI and VII are time-barred.[2] Plaintiff notes that Defendants have attempted "to invoke the discovery rule" by allegations in paragraph 44 of the Counterclaims. Pl. Mem. at 3. Plaintiff's position is not well-taken for several reasons. Plaintiff

---

[1] Defendants are filing their Response to Plaintiff's Statement of Material Facts Not in Dispute in Support of Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims contemporaneously with their Response in Opposition to the Plaintiff's Motion for Summary Judgment.

[2] Plaintiff points to no evidence to establish that the Counterclaim Count VII for Conspiracy is untimely or when Defendants became aware of facts to support that claim. *See, generally*, Pl. Mem. & Pl. SOF. In fact, Plaintiff does not advance any argument that the Counterclaim for conspiracy in Count VII is time-barred, other than stating that the applicable statute of limitations for such a claim is three years. Pl. Mem. at 2. Similarly, Plaintiff cites to no facts that establish when the breach of contract Counterclaim accrued or when Defendants became aware of those facts. Instead, Plaintiff refers, generally, to allegations. *See* Pl. Mem. at 2. That is not a sufficient basis for summary judgment and violates Rule 56(c). As such, Plaintiff's limitations argument should be rejected as to Counts I and VII.

has not and cannot establish that there is no genuine dispute that Defendants' claims for breach of contract, tortious interference, statutory inducement and conspiracy accrued in 2012. In fact, under the discovery rule, those claims—all of which relate to the Government's October 2012 suspension of Vanquish – US—did not accrue until 2015, at the earliest, when Defendants received documents during discovery in a litigation against the Government arising out of Vanquish – US's challenge to the October 2012 suspension and other suspensions under the NAT Contract.

<u>Under the Discovery Rule, the Counterclaims Did Not Accrue Until 2015 At the Earliest</u>

Plaintiff notes that Defendants were aware of certain facts about Plaintiff's interference with the NAT Contract, in general, in 2012 and points to three emails from September - November 2012 to make his point.[3] However, those emails do not suffice to establish that the Counterclaims accrued at that time because they do not show that Defendants were aware of their injury and that Plaintiff caused it. For instance, as discussed below, while the September 2012 email shows that Mr. Barton was aware that Plaintiff had contacted the NAT contracting officials, Plaintiff has not established that Mr. Barton was aware of the content of those communications—because he was not. In fact, the Counterclaims did not accrue until 2015, at the earliest, under the discovery rule.[4] Defendants do not disagree with Plaintiff regarding the applicable statutes of limitations here: six

---

[3] In Count VI, Vanquish – US seeks to recover for Plaintiff's inducement of breach of contract by Mohammad Jawid Koshani of his Non-Disclosure Agreement with his employer, Vanquish – US. Plaintiff has not cited to any facts that establish when that claim accrued and has not made any argument that that claim is time-barred. (The facts that are the subject of Plaintiff's Motion concern "interference" with the NAT Contract and do not address the NDA at all.) Therefore, to the extent Plaintiff seeks summary judgment based on a statute of limitations argument on Count VI (Statutory Liability for Inducement of Breach of NDA), that argument should be rejected.

[4] Defendants did not become aware of some facts until 2018, during discovery in this case. For example, Defendants "learned for the first time of Plaintiff's attempt to purloin the NAT Contract for his own benefit through the use of a new sole proprietorship and bank account" in 2018 during discovery in this case. *See* Doc. No. 75 at ¶ 44.

years for breach of contract under Tenn. Code Ann. § 28-3-109; and three years for the tort claims (tortious interference, statutory inducement and conspiracy) under Tenn. Code Ann. § 28-3-105.[5]

Vanquish – US did not learn that it was the Plaintiff who caused the Government to impose the October 2012 suspension until Vanquish – US started receiving discovery in August 2015 from the Government in separate litigation challenging the 2012 suspension. Therefore, the claims did not accrue until August 2015, allowing Defendants until August 2018 to file their claims. To support his argument that the claims accrued in 2012, Plaintiff primarily relies on an email from Mr. Barton to the NAT Contracting Officer in Nov. 2012.[6] *See* Exhibit H to Pl. SOF. The November 2012 email, however, did not provide Vanquish – US with sufficient information to know that it was the Plaintiff who induced the government to breach its contract with Vanquish – US, and Vanquish – US only learned such information starting in August 2015.

The Tennessee Supreme Court discussed the issue of accrual in *Redwing v. Catholic Bishop of The Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012). The court explained that a claim

---

[5] To the extent Plaintiff asserts that there may be a one year statute of limitations on the statutory inducement claims, Defendants respectfully disagree. *See* Pl. Mem. at 2 n.2. The case cited by Plaintiff, *Carlson v. Highter*, 612 F.Supp. 603 (E.D. Tenn. 1985) did not involve a claim for statutory inducement. Rather, the case concerned claims for "breach of contract and breach of fiduciary duty . . . , and for tortious interference with contractual relations." 612 F.Supp. at 604. The limitations period for statutory liability for inducement of breach of contract under Tenn. Code Ann. § 47-50-109 is three years. *See Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 324 (6th Cir. 1985); and *Smith v. Rosenthal Collins Group, LLC*, 340 F.Supp.2d 860, 864 (W.D.Tenn. 2004).

[6] Plaintiff also relies on: a Sept. 17, 2012 email from Mr. Barton to Plaintiff (Exhibit B to Pl. SOF); and an October 6, 2012 email from Mr. Barton to the USG officials (Exhibit C to Pl. SOF). These emails do not establish that Mr. Barton was aware of, among other things: the content of Mr. Koshani's discussions with the Government; Mr. Koshani's false statements to the Government that Mr. Barton won award of the NAT Contract by fraudulently using the AISA license of VW-A or otherwise; or that Mr. Koshani had asked the Government officials to suspend NAT Contract payments to Vanquish – US. These are the facts that are critical to the viability of Defendants' claims.

5

does not accrue until the claimant discovers, or should have discovered, both that he has been injured and the party who caused the injury:

> Following our discussion in *Teeters v. Curry*, [518 S.W.2d 512 (Tenn. 1990)], this Court refined the discovery rule to make it clear that it included not only the discovery of the injury but also the discovery of the source of the injury. *Sherrill v. Souder*, 325 S.W.3d 584, 585 (Tenn. 2010) (holding that **the cause of action accrues when the plaintiff discovers both the injury and the "identity of the person or persons whose wrongful conduct caused the injury"**) [other citations omitted].

*Id*. at 458 – 59 (emphasis added).

Likewise, in the case Plaintiff cites in support of his argument, *Pero's Steak and Spaghetti House v. Lee,* 90 S.W.3d 614 (Tenn. 2002), the Tennessee Supreme Court also emphasized that a claim does not accrue until the claimant discovers that he has been injured and who caused the injury:

> The plaintiff is deemed to have discovered the right of action when plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury **as a result of the defendant's conduct**.

90 S.W.3d at 621 (emphasis added). The issue posed by Plaintiff's argument, then, is whether Exhibits B, C and H to Pl. SOF were sufficient to put Vanquish – US on notice that it was Plaintiff who caused the October 2012 suspension, or was it only after receiving the government's documents starting in August 2015 that Vanquish – US first had sufficient notice of that fact. Defendants demonstrate below that their claims accrued only after August 2015 when Defendants first "discovered" facts showing Mr. Koshani's false statements and other illicit communications with the Government. Of course, the Court must view these facts in the light most favorable to Defendants, who are the non-moving party. *See Anderson, supra.* Applying that standard here, it is clear that there is a genuine dispute of material fact as to whether there was sufficient information in Exhibit H to apprise Vanquish – US that it had a claim against Plaintiff for having caused the October 2012 suspension.

6

<u>The 2012 Emails Do Not Establish that Defendants Had Notice of Their Claims</u>

First, as noted in footnote 6 above, Exhibits B and C to Pl. SOF demonstrate that Mr. Barton did not know the content of Mr. Koshani's communications with the Government. In fact, Exhibit B explicitly includes Mr. Barton's request for that information. A review of Exhibit H reveals that it says nothing about the stated reason for the October 2012 suspension, Vanquish – US's supposedly inadequate licensing under the NAT I contract. Instead, it is an email string that begins with an email from a representative of the Army requesting that Vanquish – US provide the Army with an update on the tax documentation for Vanquish – US. Pl. SOF, Exhibit H at 4. A subsequent email in the string also referenced tax documents for the Afghan partnership created by Plaintiff and Eric Barton. *Id.* at 2-3. Mr. Koshani's contribution to the email string in Exhibit H, his email of November 13, 2012, merely states something that already is noted in Exhibit B, that Mr. Koshani apparently claimed to "own" Vanquish Worldwide, LLC. *Id.* at 2. There is no reason to conclude from this email string that Mr. Koshani had induced the government to suspend Vanquish – US and stop paying Vanquish – US on its contract one month earlier. In fact, Mr. Barton's emails in this string confirm that he was not aware that Mr. Koshani caused the suspension. Certainly, there is no mention by him of that fact. And, it is reasonable to infer that Mr. Barton would have raised the issue with the Contracting Officer at the time if he was aware of it. Moreover, a review of the documents Vanquish – US started receiving from the government in August 2015 shows by stark contrast how much information is not revealed in Exhibits B, C and H, and why it was only after Vanquish – US received those later materials that it first had sufficient information to be aware that it was Plaintiff who caused the October 2012 suspension.

7

In 2015, Vanquish – US filed a series of appeals before the Armed Services Board of Contract Appeals ("ASBCA") challenging certain contract suspensions imposed by the U.S. Government under the NAT Contract.[7] One of the suspensions challenged was the October 2012 suspension. Def. SOF at ¶ 48. The government first started producing documents in that ASBCA action in August 2015. Def. SOF at ¶ 49. Those documents establish an adequate basis for alleging that Plaintiff interfered with and induced the breach of Vanquish – US's contract with the government.

For example, Exhibit E to Defendants' Statement of Facts is an email string which reflects that on or about September 13, 2012, Plaintiff spoke with the same representative of the U.S. Government referenced in Exhibit H to Pl. SOF, Bina Haroon, and told him that Mr. Barton had forged his signature on certain documents and had lied about his status as the president of some unspecified company.[8] Def. SOF, ¶ 29. Notably, Mr. Barton was not copied with that email, and Plaintiff does not and cannot show that Mr. Barton was aware of it until after August 2015. Moreover, Plaintiff did not repeat any of that information two months later in his email in Exhibit H to Pl. SOF to the same government representative, presumably because unlike the conversation referenced in Exhibit E to Defendants Statement of Facts, Mr. Barton was included in the discussion in Exhibit H. It is reasonable to infer from Plaintiff's decision not to copy Mr. Barton on his prior communication and not to mention in Exhibit H to Pl. SOF (that was copied to Mr.

---

[7] That matter was styled as: ASBCA Nos. 59966-59970; Appeals of Vanquish Worldwide, LLC Under Contract No, W91B4N-11-D-7018.

[8] Exhibit E to the Defendants Statement of Facts is an example of a document that is the subject of Defendants' *Touhy* request and a certification from the United States as to the document's authenticity and status as a business record.

8

Barton) his prior allegations of forgery and fraud that he was actively concealing that information from Defendants.[9]

Exhibit G to Defendants' Statement of Facts is a memorandum which reports that on September 27, 2012, Plaintiff met with a lieutenant general in the Afghanistan military and complained that Mr. Barton was improperly exercising control over contract payments which Plaintiff characterized as belonging to Plaintiff. Def. SOF, ¶ 33. The memo further notes that such information was shared with a Colonel in the United States Army, and this Colonel instructed his staff to investigate with the NAT Contracting Officer . Again, none of this information was revealed in Exhibit H to Pl. SOF, and reflects that Plaintiff was actively concealing the information.

Plaintiff sent an email on October 4, 2012 to the NAT Contracting Officer. Def. SOF, ¶ 34. In this email, Plaintiff reiterated his contention that the contract payments due to Vanquish – US under NAT were "the subject of a dispute as to ownership and the right to receive funds." Plaintiff further alleged that Mr. Barton had "diverted" funds paid under the NAT Contract to Vanquish – US, and Plaintiff requested that the government "freeze payments as a matter of extreme urgency."[10] *Id.* Tellingly, Plaintiff did not include Mr. Barton or any other representative of Vanquish – US on this email, corroborating Vanquish – US's contention that Plaintiff was engaged in a secret effort to induce the government to breach its contract with Vanquish – US. If there really were a legitimate dispute about ownership and entitlement to contract payments, it

---

[9] The doctrine of equitable estoppel tolls the running of the statute of limitations where a defendant has misled the plaintiff into failing to file his action within statutory periods of limitation. *O'Boyle v. Shulman*, 2011 WL 140844 (E.D. Tenn. 2010). It is also reasonable to infer from Plaintiff's concealment of his secret communications with the government that he was trying to prevent Vanquish from taking legal action to address such unlawful behavior. Plaintiff's statute of limitations arguments should be rejected for this independent reason.

[10] Mr. Barton was not copied on this email, and Plaintiff has not established that he became aware of it at any time before August 2015.

would have been logical for Plaintiff to have included Mr. Barton, who is the President of Vanquish – US, in those communications. The reason Plaintiff did not do so, and the reason Plaintiff did not reiterate the same allegations in his email in Exhibit H to Pl. SOF on which Mr. Barton was copied, appears to be that he was concealing from Defendants the unfounded allegations he was making to the government.

As proof that Plaintiff's secret efforts with the government were bearing fruit, on the very next day after Plaintiff asked the government to freeze payments on Vanquish – US's NAT Contract, the U.S. Government did freeze NAT Contract payments to Vanquish – US. Def. SOF, ¶ 36 & Ex. J at KOSH_00022459. Plaintiff did not reveal to Vanquish – US then, or in Exhibit H to Pl. SOF, that he had asked the government just the day before that payments to Vanquish – US be frozen, nor did the government reveal that fact to Vanquish – US. **Vanquish – US learned that information for the first time when it began receiving copies of Plaintiff's illicit communications in discovery from the Government in August 2015.**

The government initiated a series of investigations of Plaintiff's allegations. *See* Def. SOF, ¶ 35. Exhibit I to Defendants' Statement of Facts is an October 18, 2012 memorandum of an Army investigation which reports that a "confidential human source" informed the government that Mr. Barton had submitted a "fraudulent proposal" for the NAT Contract, and that although Mr. Barton had entered into an Afghan partnership with an Afghan national, Mr. Barton had formed Vanquish Worldwide LLC and submitted the proposal on the NAT Contract without informing his Afghan partner. (Plaintiff has not established that Mr. Barton received a copy of this memorandum at any time before August 2015.) Of course, it is reasonable to infer that the confidential source of this information was Plaintiff, or someone to whom Plaintiff had provided

10

such information.[11]  Again, the fact that Plaintiff had alleged to an Army investigator that Mr. Barton had submitted a "fraudulent proposal" on the NAT Contract was not revealed in Exhibit H to Pl. SOF.

On October 26, 2012, the Government suspended Vanquish – US under the NAT Contract. Def. SOF, ¶¶ 37-38. The Government stated that the suspension was because Vanquish – US did not have a business license from the Afghanistan Investment Support Agency (AISA) in the name of Vanquish Worldwide, LLC.  *Id.*  The government said absolutely nothing about Plaintiff's prior allegations of fraud and forgery. While Vanquish – US disagreed with the government's contention that the AISA license was inadequate, the language of the suspension letter gave Vanquish – US no reason to know that the suspension followed a series of false allegations offered by Plaintiff in secret to the government that even the government did not reveal to Vanquish – US.

Other documents Vanquish – US received only in discovery beginning in August 2015 further revealed to Vanquish – US for the first time that the licensing issues were merely a pretext the government used to suspend Vanquish – US while it investigated, unbeknownst to Vanquish – US, the false allegations Plaintiff had been secretly providing to the government.  Most tellingly, it became apparent from the documents Vanquish – US received in discovery that the government lifted the October 2012 suspension the day after concluding that Plaintiff's allegations were without merit.  *See* Def. SOF, ¶¶ 43 & 45.  In particular, on November 17, 2012, the United States informed Plaintiff that his allegations were unfounded, and rejected his request to redirect any contract payments to VW-A.  Def. SOF, ¶ 43.  The United States Government further informed Plaintiff that despite his repeated allegations that the prime contract was to have been awarded to

---

[11] One potential candidate for that confidential source, to the extent Plaintiff is not that source, would be Plaintiff's co-conspirator, Mohammad Jawid Koshani, who was an employee of Vanquish at that time.

VW-A, the United States determined that its "agreement under the NAT contract is with Vanquish Worldwide LLC, the US company." *Id*. The NAT Contracting Officer also instructed her staff to discontinue further communications with Plaintiff. *See* Def. SOF, ¶ 44.

On the very next day, the government lifted the October 2012 suspension. Def. SOF, ¶ 45. Despite having stated in its suspension letter, that the government was suspending Vanquish – US because "no valid AISA license has been provided in the name of Vanquish Worldwide, LLC," the government lifted the suspension without ever receiving an AISA license specifically in the name of Vanquish Worldwide, LLC. *See* Def. SOF, ¶¶ 42 & 45. Given that the suspension was cancelled without resolving the reason for the suspension, and that the suspension was cancelled on the very day after the government determined that Plaintiff's allegations were without merit – a telling sequence of events that Vanquish – US only learned about in discovery in the ASBCA litigation starting in August 2015 – it is logical and reasonable to infer that the suspension was imposed because of the allegations which Plaintiff had secretly provided to the government, and which the government ultimately determined were without merit. The U.S. Government ultimately conceded liability on Vanquish – US's claim that the October 2012 suspension was improper, but only after disclosing the groundless and secret allegations by Plaintiff during discovery in that 2015 litigation. Def. SOF, ¶ 51. By doing so, the government has acknowledged that its October 2012 suspension of Vanquish – US for purported licensing deficiencies was arbitrary, capricious and unlawful—and a breach of contract.

As noted above, on summary judgment, the Court must construe the facts in the light most favorable to the non-moving parties—here, the Defendants. *Bennett*, 410 F.3d at 817. The Tennessee Supreme Court has recognized: "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine."

12

*Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 854-855 (Tenn. 1995) citing *Gosnell v. Ashland Chemical, Inc.*, 674 S.W.2d 737, 739 (Tenn. App. 1984). Vanquish – US has established, based on documents it did not receive (at the earliest) until August 2015, that the government improperly suspended Vanquish – US because Plaintiff secretly provided to the government false allegations about Vanquish – US and Mr. Barton that the government ultimately found to be without merit. The issue posed by Plaintiff's motion is whether the information in Exhibits B, C and H to Pl. SOF was sufficient to place Vanquish – US on notice that it had claims for breach of contract, tortious interference and statutory inducement against Plaintiff relating to the October 2012 suspension of Vanquish – US . As noted above, those documents do not mention that Plaintiff had been secretly alleging to the government that Mr. Barton had engaged in fraud and forgery, or that Plaintiff had secretly requested that contract payments to Vanquish – US be stopped. That information—critical to the viability of Defendants' claims—was not discovered until the Government production of documents in 2015. Indeed, the documents that the government started producing to Vanquish – US in August 2015 highlight how much information was not in Plaintiff's Exhibits B, C and H.

For example, the government's documents revealed meetings between Plaintiff and the U.S and Afghan governments in which Plaintiff made baseless allegations about Mr. Barton and Vanquish – US . None of those meetings are disclosed in Plaintiff's Exhibits B, C and H, and it was only possible for Vanquish – US to find out about those meetings by obtaining the documents in discovery in litigation years later. The government's documents also show that payments to Vanquish – US were stopped on the day after Plaintiff secretly requested that the government stop such payments. That is also not disclosed or referenced in Exhibits B, C, or H. The Government's documents also show that the October 2012 suspension was lifted the very day after the Government determined that Plaintiff's allegations about Mr. Barton and Vanquish – US were

13

without merit, something that could not have been mentioned in Plaintiff's Exhibits B, C and H because the suspension was lifted after the dates of those emails. Without knowing these facts, Vanquish – US did not have enough information to determine that it was Plaintiff that caused the improper suspension, and the only way for Vanquish – US to have learned these facts was from the government's documents, which it only began to receive in August 2015 after filing a lawsuit against the government.

Under these circumstances, Plaintiff's Exhibits B, C and H were insufficient to put Defendants on notice that they could assert breach of contract, tortious interference, statutory inducement and conspiracy claims against Plaintiff as a result of the Government's October 2012 suspension of Vanquish – US. The communications from Plaintiff that induced the Government's breach of contract were not discovered until 2015. For that reason, Defendants' Counterclaims did not accrue until August 2015, when Defendants began receiving the documents in discovery in the litigation with the Government. The claims were therefore timely filed within three years, and Plaintiff's argument that he is entitled to summary judgment on limitations grounds should be rejected.

## II. MR. KOSHANI PROXIMATELY CAUSED RECOVERABLE DAMAGES AND PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT AS TO COUNTS II THROUGH VII SHOULD BE DENIED.

Plaintiff raises two separate arguments in Section II of his Motion for Summary Judgment, which he asserts entitle him to summary judgment on Counts II through VII of Defendants' Counterclaims. First, Plaintiff argues that there is a lack of evidence that Plaintiff was the proximate cause of the United States' breach of the NAT Contract. Memorandum at 4-7. Second, Plaintiff argues that Defendants cannot demonstrate recoverable damages. Memorandum at 8-10.

14

Neither of Plaintiff's arguments are availing, and his request for summary judgment on those grounds should be denied.

### A. There Is Sufficient Admissible Evidence to Establish That Plaintiff Was the Proximate Cause of the Government's Breach.

Section II of Plaintiff's Motion for Summary Judgment reiterates a now common complaint by Plaintiff—Defendants did not take adequate discovery from the United States, so they cannot prevail on their Counterclaims. *See* Pl. Mem. at 4-5. As Defendants have explained in prior filings, despite Plaintiff's complaints, Defendants did submit a *Touhy* Request and have worked with the Army to obtain documents and FRE 803(6) and FRE 902 certifications.[12] That said, Defendants have sufficient admissible evidence to establish that Mr. Koshani was a proximate cause of the suspension of Vanquish – US.

First, Plaintiff's Motion does not address what constitutes proximate cause in Tennessee. Defendants need only demonstrate that Plaintiff was a substantial factor in causing the injury, not the sole cause, last cause, or nearest cause, and that the harm Plaintiff caused was reasonably foreseeable. *Middle Tennessee Lumber Co. v. Door Components, LLC*, No. 3:12-0343, 2014 WL 12788840, at *9 (M.D. Tenn. May 2, 2014); *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527 (Tenn. Ct. App. 1993). This is important because Plaintiff appears to believe that, if he demonstrates that there was a licensing issue that may have partially caused the suspension, that Plaintiff should prevail on summary judgment. That proposition is inconsistent with the law. Even if Plaintiff could demonstrate that an issue with licensing was a cause of the suspension, which

---

[12] Plaintiff's complaints about Defendants' *Touhy* request appears to arise from Plaintiff's own failure to take discovery from the Government. Plaintiff apparently wishes to offer an October 26, 2012, letter from the Government Contracting Officer, Ms. Fraggogiannis, for the truth of the matters asserted in the letter; yet, Plaintiff never sought any discovery from the Government or Ms. Fraggogiannis.

Defendants dispute below, that, as a matter of law, would not be enough to entitle Plaintiff to summary judgment, because Plaintiff could still be the proximate cause of the suspension.

There is sufficient admissible evidence to demonstrate that Plaintiff was the proximate cause. Specifically, Vanquish – US received the first option year under the NAT Contract on September 12, 2012. Def. SOF, ¶ 24. After Vanquish – US had already received the option year, Mr. Koshani contacted the Contracting Officer and requested that the Contracting Officer change the contracting entity for the option year to a new sole proprietorship 100%-owned by Mr. Koshani, change the bank account information to a new bank account controlled by Mr. Koshani, and change the Points of Contact for the NAT Contract to Mr. Koshani and his brother, Jawid. Def. SOF, ¶ 25. He did this from newly-created phantom email accounts and requested that he and his brother be contacted at those phantom accounts going forward. Def. SOF at ¶ 26. Neither Mr. Barton nor anyone else employed by Vanquish – US was cc'ed on Mr. Koshani's communications to the Contracting Officer. Def. SOF, ¶ 27. Mr. Koshani also provided the Contracting Officer a new AISA License for his sole proprietorship. Def. SOF, ¶ 28.

After his attempt to change the contracting entity for the Option Year failed, Mr. Koshani then undertook a campaign of misinformation regarding Mr. Barton and Vanquish – US. Among the assertions he made to the Contracting Officer were allegations that Vanquish – US had improperly utilized the AISA license included in its original proposal in an effort to defraud the United States. Def. SOF, ¶ 30. Mr. Koshani further asserted that Vanquish Worldwide – Afghanistan was the rightful contractor and that he was not being properly paid by Mr. Barton. Def. SOF, ¶ 31. These were extremely serious, albeit false allegations, that centered around Plaintiff's apparent belief that Vanquish – US had improperly relied on the AISA license of Vanquish Worldwide - Afghanistan. Mr. Koshani also expressly requested that payments to

16

Vanquish – US be suspended pending resolution of his concerns by the Government. Def. SOF, ¶ 32.

Shortly after Mr. Koshani began making his complaints to the Contracting Officer, Vanquish – US's payments were suspended and, after a request for information from the Contracting Officer, Vanquish – US's performance was suspended. Def. SOF, ¶ 36. The Contracting Officer sent a Letter of Concern, which stated that Vanquish – US would be suspended for failing to provide a license in its exact legal name—"Vanquish Worldwide, LLC." Def. SOF, ¶ 37. Vanquish – US was suspended at this time. Def. SOF, ¶ 38. The Contracting Officer cited the Vanquish Worldwide – Afghanistan license in the letter that suspended Vanquish – US. Def. SOF, ¶ 39. Immediately following the Letter of Concern that included the suspension, the Contracting Officer submitted a second Letter of Concern regarding Mr. Koshani's other assertions and asking Vanquish – US to explain its relationship with Vanquish Worldwide – Afghanistan and to demonstrate that it had paid its subcontractors. Def. SOF, ¶ 40.

From the outset of Mr. Koshani's complaints and into the suspension, the Contracting Officer continued to indicate to Mr. Koshani that she was looking into his allegations. Def. SOF, ¶ 41. Although Vanquish – US provided the Contracting Officer a great deal of information in response to her Letters of Concern in an effort to lift the suspension, it was unable to provide the Contracting Officer what was demanded in her Letter suspending Vanquish – US—specifically, an AISA License in the name of "Vanquish Worldwide, LLC." Def. SOF, ¶ 42. However, on November 17, 2012, after completing her investigation into Mr. Koshani's allegations, the Contracting Officer notified Mr. Koshani that the Army's contract is with Vanquish– US, and that the Army would not get involved in Mr. Koshani's dispute. Def. SOF, ¶ 43. The very next day,

17

even though Vanquish – US never provided the requested AISA License, the Contracting Officer lifted the suspension of Vanquish - US. Def. SOF, ¶ 45.

In short, there is overwhelming evidence demonstrating that Plaintiff caused the Government to breach its contract with Vanquish – US. First, the Government awarded the renewal option to Vanquish – US. Second, Plaintiff then went behind Mr. Barton's back and tried to steal the option year from Vanquish – US.[13] Fourth, the Government then suspended Vanquish – US from both payments and the assignment of missions under the contract, and the Government requested that Vanquish – US provide an AISA license in the name of Vanquish Worldwide, LLC. Fifth, even though Vanquish – US failed to provide the requested license, the Government lifted the suspension after concluding its investigation of Plaintiff's spurious allegations. These facts contradict Plaintiff's assertion that there is no evidence that Plaintiff was a proximate cause of Vanquish – US's suspension. In fact, there is more than sufficient evidence for a reasonable factfinder to determine that Plaintiff was a substantial cause of the suspension. Plaintiff's request for summary judgment on the basis of a lack of disputed facts as to the proximate cause of Vanquish – US's suspension should be denied.

### B.  Vanquish – US  Can Demonstrate Recoverable Damages.

Plaintiff suggests that Defendants cannot demonstrate recoverable damages under Counts II through VII, because they settled a claim with the Government. Pl. Mem. at 8-9. As discussed below, Plaintiff's argument is without factual or legal support and should be rejected.

---

[13] Plaintiff did this by providing, among other things, a new license and entity type. When that did not work, he began making various inaccurate and confusing assertions about Mr. Barton and Vanquish – US, which included assertions that called into question Vanquish – US's license and the validity of Vanquish – US as an awardee. Mr. Koshani then consistently pestered the Contracting Officer into looking into his allegations, until Vanquish – US's payments were suspended and, ultimately, its performance was suspended.

18

In March 2018, the United States and Vanquish – US executed a settlement agreement to conclude five appeals that Vanquish – US had before the Armed Services Board of Contract Appeals ("ASBCA"). Def. SOF, ¶ 46. Vanquish – US's Complaint before the ASBCA alleged damages in the amount of $31,004,528 plus interest and attorneys' fees. Def. SOF, ¶ 47. A claim for the improper suspension of the NAT Contract in 2012 was one of the claims appealed and before the ASBCA. Def. SOF, ¶ 48. Moreover, Vanquish – US notified the Government of its intent to submit $6,296,836.77 in additional claims. Def. SOF, ¶ 50. Vanquish – US and the United States agreed to settle both the appeals before the ASBCA and the additional claims, which Vanquish – US valued at over $37M, for $30,000,000. Def. SOF, ¶ 52. Thus, Vanquish – US did not receive the total value of its claims in the settlement with the United States.[14] For this reason, the factual basis for Plaintiff's Motion is inaccurate, disputed, and should be denied.

Further, even if Plaintiff were correct that Vanquish – US had been fully reimbursed for the total damages associated with the suspension caused by Plaintiff, summary judgment would still be improper as a matter of law as to Counts V and VI. Specifically, Counts V and VI are based on Tenn. Code Ann. § 47-50-109, which creates statutory liability for inducement of a breach of contract. An individual that induces a breach in accordance with T.C.A. § 47-50-109 is automatically liable for treble damages. Indeed, the statute is of a "penal nature" and "contemplates the imposition of a severe penalty." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 354-55 (Tenn.Ct.App.1999) (quoting *Emmco Ins. Co. v. Beacon Mut. Indem. Co.*,

---

[14] Plaintiff cites to deposition testimony by Mr. Barton as demonstrating that Vanquish – US was paid the "full amount of its claim," which we believe Plaintiff equates to the total damages caused by the breach induced by Mr. Koshani. Pl. Mem. at 8. Mr. Barton's testimony demonstrates that he was unsure how much Vanquish – US was actually paid by the United States and for what length of time. *See* Pl. SoF, Ex. J. at 95:4-20. Moreover, Mr. Barton was simply indicating that Vanquish – US was paid the full amount that it settled for, not the full amount of the damages caused by Mr. Koshani. Barton Decl. at ¶ 12 (Ex T to Def. SOF).

19

204 Tenn. 540, 551 (1959)). Thus, although a party that induces a breach may be entitled to an offset in the amount paid in compensatory damages by the party that breached, the party that induced the breach is still liable for the remaining treble damages. *See Reinhart v. Knight*, No. M2004-02828-COA-R3-CV, 2005 WL 3273072 (Tenn. 2005). Thus, as a matter of law, Plaintiff's assertions regarding Vanquish – US's settlement with the United States may entitle Plaintiff to an offset against treble damages, but does not entitle Plaintiff to summary judgment. For these reasons, Plaintiff's Motion should be denied.

## III. COUNTS IV THROUGH VII STATE A VALID CLAIM, AS THEY ARE NOT SUBJECT TO THE LAW OF AFGHANISTAN.

In Plaintiff's argument in Section III of his Motion for Summary Judgment, Plaintiff asserts that the law of Afghanistan applies to Counts IV through VII of Defendants' Counterclaims and, as a result, those Counterclaims fail to state a claim. Pl. Mem. at 10-12. Plaintiff's argument fails for multiple reasons. First, Plaintiff does not even attempt to support the facts that he relies upon with any of the materials required by FRCP Rule 56(c). Second, facts that are important to Plaintiff's argument are in dispute. Third, Plaintiff's legal conclusion is wrong—Tennessee law is the appropriate law for the claims set forth at Counterclaims IV through VII. For all those reasons, Plaintiff's request for Summary Judgment should be denied.

FRCP Rule 56(c) provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. In his Motion, Plaintiff makes a series of factual assertions that he does not support with citation to any portion of the record. *See* Pl. Mem. at 11-12. Plaintiff's unsupported factual assertions include that Vanquish – US and Plaintiff's relationship is "centered in Afghanistan," that Vanquish – US and the United States' relationship

is centered in Afghanistan, and that the injury to Vanquish – US was suffered in Afghanistan. Again, Plaintiff does not support any of these assertions with any citation to the record, which should result in denial of Plaintiff's motion for summary judgment because Plaintiff has not carried his burden.

Moreover, Defendants dispute the accuracy of Plaintiff's assertions. Vanquish – US is a limited liability company that is organized under the laws of Wyoming with a principal place of business in Tennessee. Def. SOF, ¶ 53. Mr. Barton is also a United States citizen and resident of the state of Tennessee. Def. SOF, ¶ 54. The NAT Contract was entered into by Vanquish – US and the United States Government, based on a proposal submitted by Vanquish – US from Tennessee. Def. SOF, ¶ 55. Aside from a trip to Afghanistan in August and September 2011 at the outset of the NAT Contract, Mr. Barton mostly communicated about the NAT Contract with Plaintiff, Vanquish – US's subcontractors, and the United States from Tennessee. Def. SOF, ¶ 56. Further, as Plaintiff is aware, Vanquish – US was paid under the NAT Contract into a Tennessee bank account and paid subcontractors from that account. Def. SOF, ¶ 57. If the United States had not breached the NAT Contract and suspended Vanquish – US, Vanquish – US would have been paid additional sums into its Tennessee bank account. Def. SOF, ¶ 58. The injury to Vanquish – US alleged in the pertinent Counterclaims all occurred in Tennessee. Def. SOF, ¶ 59. In short, Plaintiff's unsupported factual allegations are simply incorrect. Mr. Barton's and Mr. Koshani's relationship was not centered in Afghanistan. Vanquish – US's and the United States' relationship was not centered in Afghanistan. Finally, and most importantly, the injury that Vanquish – US suffered as a result of Plaintiff's actions was not suffered in Afghanistan, but in Tennessee.

Indeed, the facts at issue in this matter demonstrate that the proper choice of law for Counterclaims IV through VII is the law of Tennessee. As the Sixth Circuit has stated:

21

Tennessee follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions. Under this approach, the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation. Tennessee adopted this position because generally the law of the state where the injury occurred will have the most significant relationship to the litigation. Thus, the most significant relationship provides a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation.

*Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (quoting *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn.1992)) (internal citations and quotations removed). In this case, Vanquish – US suffered the financial injury caused by Plaintiff in Tennessee. If Plaintiff had not undertaken his efforts to steal the NAT Contract and to make false statements about Vanquish – US, Vanquish – US would have received the claimed amounts in its Tennessee bank account. Ultimately, the injury occurred in Tennessee, which creates a presumption that Tennessee law applies, and Plaintiff does not demonstrate that Afghanistan has a greater interest than Tennessee in a claim for money diverted from the Tennessee bank account of a company headquartered in Tennessee and owned by a Tennessee resident. Tennessee law properly applies to Counts IV though VII.

## IV. TENNESSEE'S STATUTORY INDUCEMENT CLAIM APPLIES TO CLAIMS WHERE THE INJURY OCCURRRED IN TENNESSEE.

Plaintiff also incorrectly argues that "[b]inding Sixth Circuit authority" precludes Vanquish – US's claim for violation of Tenn. Code Ann. § 47-50-109, because the conduct giving rise to the injury occurred outside of Tennessee. Pl. Mem. at 12. The precedent that Plaintiff relies upon was changed long ago and, pursuant to the current state of the law, Tenn. Code Ann. § 47-50-109 is properly applied to Plaintiff's actions as described in Defendants' Counterclaims Counts V and VI.

Plaintiff cites *Telecomm., Eng'g Sales & Servs. Co. v. Southern Tel. Supply Co.*, 518 F.2d 393, 395 (6th Cir. 1975) for the contention that Sixth Circuit authority precludes Vanquish – US's

22

statutory inducement claim because the conduct giving rise to the claim occurred in Afghanistan. In that case, the court held that "[i]n tort actions, Tennessee adheres to the traditional conflicts rule and consequently applies the law of the place of the wrong or *lex loci delecti*." 518 F.3d at 394 (citing *Kennard v. Il. Central R.R. Co.*, 148 S.W.2d 1017 (1941)). The Court then held that "[a]pplying the accepted Tennessee rule for determining the place of the wrong," Tennessee's procurement of breach of contract statute did not apply. *Id.* at 395. In short, *Telecomm., Eng'g Sales* applied the then-prevailing Tennessee choice of law rules to determine that the inducement of a breach of contract statute would not be applicable when the tort was committed outside of Tennessee.

However, the 1941 Tennessee decision upon which the *Telecomm., Eng'g Sales* court relied, was overturned by a 1992 decision changing the law in Tennessee. In *Hathaway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992), the Tennessee Supreme Court abandoned the doctrine of *lex loci delecti* and adopted instead the "most significant relationship test" articulated in the *Restatement (Second) of Conflict of Laws*, under which, as the *Hathaway* court explained, tort cases are subject to "the law of the state where the injury occurred . . . unless some other state has a more significant relationship to the litigation." 830 S.W.2d at 59. Sixth Circuit authority since the *Hathaway* decision in 1992 has consistently followed *Hathaway. See, e.g., MacDonald v. General Motors Corp.,* 110 F.3d 337, 349 (6th Cir. 1997) ("*Hathaway v. McKinley,* 830 S.W.2d 53 (Tenn. 1992), adopts as a conflicts of law rule the 'most significant relationship approach of the *Restatement (Second)* for wrongful death.'"). Indeed, District Courts in Tennessee have utilized the "most significant relationship" test to determine that Tenn. Code Ann. § 47–50–109 is applicable when the injury in question occurred in Tennessee. *See GCA Servs. Group, Inc. v. ParCou, LLC*, No. 2:16–cv–02251–SHL–cgc, 2017 WL 5496564, at **5 & 13 (W.D. Tenn. 2017)

(finding Tennessee law applied to Plaintiff's tort claims, including a claim for inducement of breach, because the injuries alleged occurred in Tennessee); *Green Ballast, Inc. v. Bethell*, No. 13-2601, 2013 WL 12147028 (W.D. Tenn. 2013); *America's Collectibles Network, Inc. v. MIG Broadcast Group, Inc.*, No. 3:06-cv-260, 2008 WL 833521, at *15 (E.D. Tenn. 2008) (finding Tenn. Code Ann. § 47–50–109 applies using the "most significant relationship" rule) (overturned on other grounds).[15]

Plaintiff asserts that this Court ruled in *Functional Pathways of Tennessee, LLC v. Wilson Senior Care, LLC*, 866 F.Supp.2d 918 (E.D. Tenn. 2012), that the former doctrine of *lex loci delicti* was still applicable to federal tort cases filed in Tennessee. However, that misstates the Court's ruling in *Functional Pathways*. The parties in that matter appeared to agree that the Plaintiff's statutory claim for inducement of breach of contract should be dismissed, so that a disputed issue on the current applicability of the *lex loci delicti* was not presented to the Court. Thus, any observation by this Court in *Functional Pathways* was immaterial to the outcome of the case and dictum.

Indeed, this Court has affirmed in an earlier decision that the choice of law for tort claims filed in Tennessee is now governed by *Hathaway*. In *O'Boyle v. Shulman*, 2010 WL 1408444 (E.D.Tenn. 2010), this Court ruled as follows:

> Because plaintiffs filed this action in the United States District Court for the Eastern District of Tennessee, the court must follow Tennessee's choice of law rules. In tort

---

[15] Plaintiff may attempt to decouple the Court's holding in *Telecomm., Eng'g Sales* from the now-defunct *lex loci delicti* approach to determining the applicability of Tennessee law. Indeed, in Plaintiff's Reply in Support of its Motion to Dismiss Defendants' previous counterclaims, Plaintiff did just that, stating that *Telecomm., Eng'g Sales* did not really use on a choice of law methodology, but addressed "the extraterritorial application of Tenn. Code Ann. § 47-50-109." Doc. No. 36 at 11. However, the Sixth Circuit in *Telecomm., Eng'g Sales* expressly stated that they were dealing with a "conflicts of laws question." 518 F.2d 392, 394 (1975). Moreover, in holding the inapplicability of the Tennessee statute, the Court specifically utilized the *lex loci delicti* test. *Id.* at 394-95. In short, one simply cannot separate the no-longer-followed *lex loci delicti* choice of law rule from the Court's holding in *Telecomm., Eng'g Sales*.

cases, Tennessee uses the "most significant relationship" test. *Hathaway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Under the test, a court applies the local law of the state where the injury occurred unless some other state has a more significant relationship to the occurrence and to the parties.

*Id.* at *4. Accordingly, this Court has affirmed the application of Tennessee's current choice of law rules, which should be applied in this case.

Plaintiff's argument on the statutory inducement claim is based on a choice of law doctrine that was abandoned by Tennessee courts in 1992. Further, as more fully detailed in Section III above, utilizing the "most significant relationship" test currently followed by Tennessee, the proper choice is Tennessee law. Plaintiff's motion for summary judgment on the counterclaims for a violation of Tenn. Code Ann. § 47-50-109 should be rejected. Tennessee law applies, and a claim for violation of the statute is legally viable.

For these reasons, Defendants request that the Court deny Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims.

Dated: February 27, 2019
         */s/ Michael Maloney*
         Michael Maloney (DC Bar No. 419428)
         Williams Mullen, PC
         8300 Greensboro Drive, Suite 1100
         Tysons, VA 22102
         Telephone: (703) 760-5234
         Facsimile: (703) 748-0244
         Email: mmaloney@williamsmullen.com
         (admitted *Pro Hac Vice*)

         William A. Wozniak (VA Bar No. 79233)
         Williams Mullen, PC
         8300 Greensboro Drive, Suite 1100
         Tysons, VA 22102
         Telephone: (703) 760-5215
         Facsimile: (703) 748-0244
         Email: wwozniak@williamsmullen.com
         (admitted *Pro Hac Vice*)

25

Garrett P. Swartwood (BPR # 021803)
Long, Ragsdale & Waters, P.C.
1111 Northshore Drive, S-700
Knoxville, Tennessee 37919
Telephone: (865) 584-4040
Facsimile: (865) 584-6084
Email: gswartwood@lrwlaw.com

Todd Miller (CO Bar No. 16306)
Miller & Miller, LLC
419 Ridge Road
Golden, CO 80403
Telephone: (303) 877-2681
Email: twm@twmlawoffice.com
(admitted *pro hac vice*)

*Counsel for Defendants Eric Barton and Vanquish Worldwide, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2019, a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system and that parties may access this filing through that system.

/s/ Michael Maloney
Michael Maloney

26